**UNITED STATES of America**

v.

**Patrick CUMMISKEY, Appellant.**

**UNITED STATES of America**

v.

**Michael CLARK, Appellant.**

**Nos. 83–1280, 83–1284.**

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
Nov. 29, 1983.

Decided Feb. 22, 1984.

Rehearing and Rehearing In Banc
Denied March 20, 1984.

202

Arnold P. Minicozzi, Stephen Robert La-Cheen & Alva, Philadelphia, Pa., for appellant Clark.

Robert J. O'Shea, Jr., Defender Ass'n of Philadelphia, Philadelphia, Pa., for appellant Cummiskey.

Edward S.G. Dennis, Jr., U.S. Atty., E.D. Pa., Philadelphia, Pa., William C. Bryson, Dept. of Justice, Washington, D.C., Ronald G. Cole, Sp. Atty., Dept. of Justice, Philadelphia, Pa., for appellee.

Before GIBBONS and SLOVITER, Circuit Judges and CALDWELL, District Judge *.

## OPINION OF THE COURT

GIBBONS, Circuit Judge:

Patrick Cummiskey and Michael Clark appeal from sentencing orders following their convictions for violations of the Victim and Witness Protection Act of 1982, 18 U.S.C. § 1513 (1982), and for conspiracy to violate the Act, 18 U.S.C. § 371 (1982). These appeals raise two principal issues for our consideration: whether the district court improperly admitted comments on the defendants' silence, in violation of *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); and whether the indictment properly charged offenses under sections 1513 and 371.

### I.

Cummiskey and Clark assert that remarks made by the prosecutor during trial and in summation to the jury constituted impermissible comments on the defendants' silence. At trial the government advanced the theory that Clark and Cummiskey threatened the life of Michael Cosmo in retaliation for Cosmo's testimony given at a criminal trial. Cosmo testified that after learning that Clark and Cummiskey "were

---

* Hon. William W. Caldwell, United States District Judge for the Middle District of Pennsylva-

going to get [him]," Clark App. at 37, he sped off in a truck. Both defendants followed in a car. At one time Clark and Cummiskey forced Cosmo's truck to a halt. Cummiskey threatened Cosmo's life; Clark brandished a weapon at him. Cosmo again sped off, exchanging gunfire with Cummiskey's pursuing car. Shortly thereafter, Cosmo testified, he spotted a Philadelphia patrol car and informed two police officers that "those two guys are after me." *Id.* at 41. The officers sped after Cummiskey and Clark and arrested them.

At no time during trial did the government or either defendant establish the time at which the defendants had been given the warning prescribed by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), that a person in custody has the right to remain silent. Clark did not testify at trial. Cummiskey testified that he and Clark were pursuing Cosmo because they were concerned for his welfare. According to Cummiskey, Cosmo was shooting at their pursuing car for no apparent reason. Both men were mystified, Cummiskey stated, that Cosmo should have been shooting at them. Clark App. at 202–04. On cross-examination, Cummiskey was asked whether he had told this same story to the arresting officers. The following colloquy ensued:

CUMMISKEY: I didn't say anything to the officers when we got arrested on the scene there; I didn't say a word.

Q: You weren't surprised at all ... that they arrested you [although Cosmo was shooting at you]?

A: Sure I was.

Q: But you didn't say a thing, did you.

COUNSEL FOR CUMMISKEY: Your Honor, I object.

THE COURT: Sustained.

No specific reference was made in this objection to the prosecutor's failure to establish the absence of *Miranda* warnings. The government rested its case without doing so. In context, however, the objection,

nia, sitting by designation.

promptly sustained, could only have been on the basis that the use of silence at the time of arrest for impeachment purposes, following a *Miranda* warning, was impermissible. Thus the prosecutor was on notice that he could not impeach by reference to silence at the time of arrest until the time of the *Miranda* warnings was established.

During his summation to the jury, the prosecutor emphasized the implausibility of Cummiskey's account, stressing that Cummiskey did not tell a similar account to police after his arrest:

> [Cummiskey] would have you believe that he and Michael Clark were being good samaritans on that night; .... And then Patrick Cummiskey does a very strange thing. He hears gunshots. He says that Michael Cosmo is firing at him, and they are following Michael Cosmo's truck to find out why Michael Cosmo got so upset when he saw Michael Clark and Patrick Cummiskey. And, the gunfire, according to Mr. Cummiskey, was being shot at them. Does Mr. Cummiskey seek refuge by turning away and stopping, or going in the opposite direction? Does he do what any normal person would do under these circumstances, perhaps go to the police? No.... He would have you believe that he followed Michael Cosmo because he was concerned that Michael Cosmo misunderstood his reason for being there, ....
>
> Now, put yourselves in that position. Lo and behold, not only did Michael Cosmo get the whole thing confused, but the Philadelphia police got confused too. They thought it was Patrick Cummiskey and Michael Clark who was doing the shooting. So ... they stopped them and they arrested them, and they told them, "You are being arrested because we have a complaint that you were shooting at a federal witness." ...
>
> Well now, ... put yourself in Patrick Cummiskey's shoes, ... [don't] you think he would have explained that to the police? [Don't] you think he would have said, "Wait a second, you've got the wrong guy here. My friend, Michael Clark, and I were good samaritans to-

night. It was Michael Cosmo who was shooting at me"?

> No, members of the jury .... Those two men were not surprised. They knew why they had been arrested.... They didn't protest. They didn't say, "You've got the wrong person."
>
> COUNSEL FOR CUMMISKEY: Objection.
>
> THE COURT: Overruled.

Clark App. at 221–24.

At the conclusion of summation, Cummiskey moved for a mistrial on the basis of the prosecutor's references to the defendants' post-arrest silence. The court denied that motion. When the matter was raised in post-trial motions, the court ruled that the defendants bore the burden of showing that *Miranda* warnings had been given at the time of arrest, and that they did not carry that burden:

> [C]learly this evidence should properly be admissible and I further rule that it is not barred absolutely as a matter of law because there was nothing in the record to show that *Miranda* warnings had been given and it would be the giving of *Miranda* warnings that would trigger the requirement not to comment on silence.
>
> Cummiskey's argument is that it is the Government's burden to establish that *Miranda* warnings were not given.
>
> I am saying that if the argument is being made by the Defendant it was the Defendant's obligation to bring out and to make the record clear that in fact *Miranda* warnings were given. That would have been simple enough by a simple question or two to the police who appeared here as witnesses.

Clark App. at 306.

Defendants press two arguments before us. First, both defendants urge that we should presume that *Miranda* warnings were given at the time Cummiskey and Clark were placed under arrest. In that event, the prosecutor's remarks during trial and summation would constitute comments on defendants' silence after *Miranda* warnings were given. *See Doyle v. Ohio,* 426

U.S. 610, 616–20, 96 S.Ct. 2240, 2243–45, 49 L.Ed.2d 91 (1976). In the alternative, the defendants urge that the district court erred as a matter of law by placing the burden of showing that *Miranda* warnings had been given on the defendants. Accordingly, they ask that we remand for a factual finding on the time *Miranda* warnings were given. Neither of the defendants' arguments need be reached, however, if we conclude that any error was harmless as to both defendants beyond a reasonable doubt. *See Chapman v. California,* 386 U.S. 18, 21–24, 87 S.Ct. 824, 826–828, 17 L.Ed.2d 705 (1967). We turn first, therefore, to consider the impact of the prosecutor's remarks on Cummiskey's and Clark's defenses.

### A.

■ Cummiskey testified at trial, offering as his sole defense the contention that he pursued Cosmo in order to discover why Cosmo was fleeing from him, and not to retaliate against him. In his principal line of rebuttal to this contention, the prosecutor argued that Cummiskey's story was incredible because he had not told this story to the police at the time of his arrest. Thus, the issue of whether Cummiskey had in fact related a similar story to police when he was arrested was crucial to the theory of the defense. The prosecutor emphasized Cummiskey's silence in this respect both during the trial and extensively during closing argument. In short, the government's references to Cummiskey's silence "attacked the heart of his case." *United States v. Massey,* 687 F.2d 1348, 1353–54 (10th Cir.1982). On this record, we do not

believe that any error as to Cummiskey would be harmless beyond a reasonable doubt.[1]

■ Unlike Cummiskey, Clark did not testify at trial. Consequently, Clark did not advance the theory that he pursued Cosmo because he was concerned for Cosmo's welfare. Undoubtedly for this reason, the prosecutor, during closing argument, addressed his remarks to Cummiskey, not to Clark. For example, the prosecutor stated, "[P]ut yourself in Patrick Cummiskey's shoes, . . . [don't] you think he would have explained that to the police? . . ." The prosecutor's references embraced Clark only by virtue of passing references to "[t]hose two men" and "[t]hey didn't protest." Although any such affirmative use[2] of Clark's silence was clearly improper, *see Malloy v. Hogan,* 378 U.S. 1, 11–14, 84 S.Ct. 1489, 1495–1497, 12 L.Ed.2d 653 (1964), we believe that the attenuated relationship of these remarks to Clark rendered them harmless beyond a reasonable doubt.

Because we have concluded that any improper comment on Cummiskey's silence would not be harmless beyond a reasonable doubt, we turn to consider the defendants' arguments in the context of Cummiskey's case.

### B.

■ Cummiskey argues that we should engage in the presumption that *Miranda* warnings were given at the time of his arrest. That course, however, is foreclosed by the Supreme Court's recent holding in

---

**1.** Judge Sloviter notes that although Cummiskey's testimony that he continued to follow Cosmo's truck at a high speed even after Cosmo shot at him because he "still would like to know what is going on here", App. at 192A, is inherently incredible, the credibility of the witnesses in the face of what is essentially two nakedly conflicting stories is for the jury. The other three occupants of the truck were in a position (on the floor) where they were unable to testify with certainty that the loud noises they heard from Cummiskey's vehicle were gunfire. Although Christopher Dumas did corroborate Cosmo's story about the threat uttered by Cummiskey when the cars stopped the truck at Aramingo Avenue and Cambria during

the chase, App. at 83A–86A, Judge Sloviter cannot confidently say that the amount of the government's cumulative evidence was so strong that the prosecutor's comments could not have influenced the jury. In other circumstances, impermissible comment by the prosecutor might be considered harmless error. *See United States v. Harrington,* 636 F.2d 1182, 1187 (9th Cir.1980).

**2.** Because Clark did not testify, he could not be impeached. Any reference to Clark's silence could only have pertained to the government's affirmative case against him.

*Fletcher v. Weir,* 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982) (per curiam). In *Fletcher,* the Supreme Court declined to extend the rule of *Doyle v. Ohio* to all comment on post-arrest silence. The Sixth Circuit had held that "impeachment of a defendant by post-arrest silence is forbidden by the Constitution, regardless of whether *Miranda* warnings are given." *Weir v. Fletcher,* 658 F.2d 1126, 1130 (6th Cir.1981), *rev'd,* 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982). The Supreme Court reversed, reasoning that only the "affirmative assurances embodied in the *Miranda* warnings" render it fundamentally unfair to permit cross-examination on post-arrest silence. 455 U.S. at 607, 102 S.Ct. at 1312. Although nothing in the *Weir* record indicated the time *Miranda* warnings were given, *see* 658 F.2d at 1129, the Supreme Court did not presume that the warnings were given at the time of arrest. Accordingly, we do not believe that we are authorized to engage in such a presumption.

■ Cummiskey also argues that the district court erred by placing the burden on the defendant to establish the giving of *Miranda* warnings. He notes that counsel for Cummiskey entered a timely objection during trial to the prosecutor's comment on Cummiskey's silence, and that the district court sustained this objection. Having been put on notice of the *Doyle v. Ohio* problem by the court's ruling during cross-examination, the government could, during its own case, have attempted to establish that *Miranda* warnings were not given until some time after Cummiskey's arrest. It made no such effort. The defendant, having had his objection sustained, could not have been on notice that he had any obligation to fill in this gap in the evidence. With the record in this posture, the prosecutor nevertheless argued to the jury that Cummiskey's silence at the time of arrest could be used as evidence impeaching his testimony.

The government advances two reasons why Cummiskey's *Doyle v. Ohio* contention should be disregarded. The first is that Cummiskey's objection, during trial, was insufficiently specific to satisfy Fed.R.Evid. 103(a)(1), because his counsel did not state the specific ground of objection. This argument is frivolous. The objection was sustained immediately. Cummiskey's counsel had no reason to believe that either the trial court or the prosecutor was ignorant of the holding in *Doyle v. Ohio.* The court's ruling on the post-trial motion establishes that the trial court, at least, was aware of that holding. Moreover, the government does not suggest any other basis for the trial court's favorable ruling on the objection during trial. The specific ground for the objection was, and is, apparent from the context. Finally, a construction of Fed.R. Evid. 103(a)(1) requiring a listing of specific grounds for objections which produce immediate favorable rulings would be inconsistent with its purpose, and would unduly protract trials by colloquy which would in most instances serve no purpose other than to display counsel's erudition.

The second reason urged upon us for disregarding the *Doyle v. Ohio* contention is that relied upon by the trial court: that a testifying defendant who wants to rely on the rule announced in that case has the burden of establishing the giving of *Miranda* warnings. If he does not do so, it is argued, he runs the risk that the prosecutor may comment on his post-arrest silence.

The relevance of post-arrest silence depends entirely upon its impeaching character as an arguably prior inconsistent assertion by the action of remaining silent. *Doyle v. Ohio* holds that when the action of remaining silent occurs after the witness has received *Miranda* warnings, that action is not relevant as a prior inconsistent assertion. Thus, the absence of *Miranda* warnings is a typical instance of a condition of fact on the fulfillment of which relevancy of other evidence, in this case post-arrest silence, depends. Fed.R.Evid. 104(b). Because it is the prosecutor who is attempting to establish the relevancy, for impeachment or any other purpose, of post-arrest silence, the government bears the burden of introducing evidence sufficient to support a finding of the fulfillment of the condition.

Rule 104(b) provides that when the relevancy of evidence depends upon the fulfillment of such a condition of fact, "the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition." Fed.R.Evid. 104(b). The Rule plainly contemplates that the moving party bears the burden of introducing such supporting evidence.

The government urges that despite Rule 104(b), the Supreme Court has placed on the testifying defendant the obligation to establish the giving of *Miranda* warnings. For that proposition, the government again relies upon *Fletcher v. Weir,* 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982) (per curiam). *Fletcher* does not support the government's position. It holds only that an arrest alone, not accompanied by *Miranda* warnings, is insufficient to place the testifying defendant within the rule of *Doyle v. Ohio.* In that case the Sixth Circuit had declined the state's invitation to order a remand for factual findings, holding that no such remand was required because the giving of *Miranda* warnings was irrelevant as a matter of law. *See Weir v. Fletcher,* 658 F.2d at 1129 n. 8. Consequently, the issue of which party bears the burden of establishing the giving (or absence) of warnings was not addressed by the Sixth Circuit, and was not before the Supreme Court.

We hold, therefore, that when a testifying defendant makes an objection to the prosecutor's cross-examination with respect to post-arrest silence, it is the prosecutor's burden, under Rule 104(b), to establish that *Miranda* warnings were not given prior to the silence relied upon for impeachment purposes. Absent record evidence to that effect, the prosecutor may not, during cross-examination or argument, rely, for impeachment, on the fact that the witness's statement to the arresting officer was not as complete as that made on the stand. ■ That holding requires that we consider an appropriate disposition for Cummiskey's appeal. The *Doyle v. Ohio* ground is the only one which would, on this record,

warrant a new trial. Questions of conditional relevancy are initially for the court. Thus the question whether *Miranda* warnings were given to Cummiskey at the time of his arrest can be determined in a post-trial hearing. Moreover, the defendant may, under Rule 104(d), testify on that issue without subjecting himself to cross-examination as to other issues in the event of a retrial. It is true that in making a finding of conditional relevancy under Rule 104(b), the court's finding of fact does not preclude a contrary finding by the jury. Fed.R.Evid. 104(b) advisory committee note. Nevertheless, the court's ruling would be determinative of admissibility—and thus of the propriety of using post-arrest silence, as was done by the prosecutor here—for impeachment. Thus if the trial court should find that no *Miranda* warnings were given at the time of Cummiskey's arrest, no purpose would be served by a new trial. *See United States v. Massey,* 687 F.2d at 1354.

## II.

■ Cummiskey and Clark also argue that the indictment did not properly charge a violation of section 1513 of the Witness Protection Act or conspiracy to violate that Act.

The Witness Protection Act defines an offense with three elements: (1) knowing engagement in conduct (2) either causing, or threatening to cause, bodily injury to another person (3) with the intent to retaliate for, *inter alia,* the attendance or testimony of a witness at an official proceeding. 18 U.S.C. § 1513(a)(1) (1982). The Act also makes an attempt to commit these acts an offense.

Count I of a two-count indictment charges that Clark and Cummiskey "*did knowingly threaten to engage in conduct* to cause bodily injury to Michael Cosmo" with the intent to retaliate against Cosmo for testimony given by him at a criminal trial. Clark App. at 2 (emphasis added). Count II charges that Clark "*knowingly [conspired] to engage in conduct* to cause bodily injury to Michael Cosmo" with the intent to retaliate. *Id.* at 8 (emphasis added). Both de-

fendants argue that neither count alleges a violation of section 1513. Count I is attacked because it alleges a "knowing [ ] threat [ ] to engage in conduct" causing injury, rather than a knowing engagement in conduct threatening to cause injury. Count II is attacked because it alleges a "knowing [ ] [conspiracy] to engage in conduct" rather than a conspiracy to engage knowingly in conduct. Neither defendant raised these objections until the court's charge to the jury.

Although the indictment might have been drawn more artfully, we believe that Count I adequately charged a violation of section 1513. The transposition of the word "threaten" in Count I was an insubstantial defect; Count I gave ample notice that the defendants were charged with engaging in conduct threatening to cause bodily injury. Similarly, the transposition of the word "knowing" in Count II was insubstantial. Both charges "fairly inform[ed] [the] defendant[s] of the charge[s] against which [they] must defend." *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974). The indictment's ample notice of the offenses charged is evident in the failure of either defendant to raise an objection until the district court, *sua sponte,* noticed these disparities in language. In these circumstances, defendants' challenges to the indictment are without merit. *See United States v. Shoup,* 608 F.2d 950, 960–61 (3d Cir.1979).[3] Clark and Cummiskey also challenge the district court's instructions regarding section 1513. The district court charged that the jury must find whether "these defendants actually engaged in conduct which threatened to cause bodily injury." Clark App. at 257. This instruction was a correct statement of the charge set forth in the indictment as we have construed it.

### III.

The judgment in *United States v. Clark,* No. 83–1284, will be affirmed. The judgment in *United States v. Cummiskey,* No. 83–1280, will be vacated and the case remanded for a hearing before the court as to whether or not *Miranda* warnings were given at the time of Cummiskey's arrest. If the court finds that *Miranda* warnings were given at that time, an order shall be entered granting Cummiskey a new trial. If the court finds that *Miranda* warnings were not given at the time of arrest, the judgment appealed from shall be reinstated.

---

**3.** Fed.R.Crim.P. 12(b)(2) requires defenses and objections based on defects in the indictment to be raised before trial. Rule 12(f) makes the failure to raise a mandatory objection a waiver. However, defects based on the failure of an indictment to charge an offense may be noticed "at any time during the pendency of the proceedings." Fed.R.Crim.P. 12(b)(2); *see United States v. Shoup,* 608 F.2d 950, 960 (3d Cir. 1979). Indictments "which are tardily challenged" are nevertheless "liberally construed in favor of validity." *Id.* at 960 n. 19, citing *United States v. Pheaster,* 544 F.2d 353, 361 (9th Cir.1976), *cert. denied,* 429 U.S. 1099, 97 S.Ct. 1118, 51 L.Ed.2d 546 (1977).