**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Anthony TAYLOR, Defendant-Appellant.**

No. 85-1758.

United States Court of Appeals, Tenth Circuit.

Sept. 8, 1986.

John E. Green (William S. Price, U.S. Atty., and Stephen J. Koratash, Asst. U.S. Atty., with him on the brief), First Asst. U.S. Atty., Oklahoma City, Okl., for plaintiff-appellee.

Scott W. Reed, Salt Lake City, Utah, for defendant-appellant.

Before BARRETT, McKAY and MOORE, Circuit Judges.

BARRETT, Circuit Judge.

Defendant-Appellant, Anthony Taylor, appeals from a jury conviction on two counts of violating 18 U.S.C. § 2113(a) and (d), bank robbery and assault on a person while committing a bank robbery. The jury convicted Taylor of an armed robbery

of the Crown Heights Branch of the Local Federal Savings and Loan Association in Oklahoma City, Oklahoma, on January 4, 1985, and an armed robbery of the Communications Federal Credit Union in Oklahoma City, Oklahoma, on December 13, 1984. The district court entered an Order of Judgment and Commitment on May 16, 1985. A Notice of Appeal was filed by Taylor on May 20, 1985. Jurisdiction is vested in this court pursuant to 28 U.S.C. § 1291.

Defendant Taylor raises four issues on appeal: (1) whether the district court erred in allowing the testimony of Wayne Nave into evidence in violation of Taylor's Sixth Amendment right to counsel; (2) whether the district court erred in denying Taylor's Motion to Sever the trial on the counts in the indictment; (3) whether the conduct of the Government's attorney amounted to prosecutorial misconduct requiring a new trial; and (4) whether the conduct of Taylor's trial counsel constituted ineffective assistance of counsel?

## I.

### A.

Taylor contends that the admission and use of incriminating statements he made to a Government informant about the armed robberies for which he was on trial, violated his Sixth Amendment right to counsel. The Government contends that the informant was not a Government agent and therefore the protections afforded under the Sixth Amendment do not apply. We agree with the Government that under the facts and circumstances of this case, the informant was not a Government agent. We hold that Taylor's Sixth Amendment right to counsel was not violated and the informant's testimony at trial regarding Taylor's incriminating statements was properly admitted.

The relevant facts regarding Taylor's Sixth Amendment claim are not in dispute. Taylor was indicted by a grand jury on February 5, 1985, on two counts of armed robbery. Following his indictment, and

while he was awaiting trial in the Oklahoma County Jail, Taylor encountered Wayne Nave with whom he previously had been employed. Nave testified that Taylor initiated a conversation in which he said "that he had some bank robbery charges and that he needed an alibi because he felt as though he could beat the cases, and that he really wasn't worrying about one of the robberies but he needed a good alibi for January 4th because of the robbery at the local Federal Savings and Loan on Western." (R., Supp. Vol. I, p. 144.)

After this encounter, and at Nave's request, an agent of the Federal Bureau of Investigation (FBI) visited Nave at which time Nave related the substance of Taylor's statements. Taylor was subsequently placed in the same cell with Nave. While they were cellmates, Taylor admitted to Nave that he robbed both financial institutions and related the details of those robberies.

Nave testified on direct and cross-examination that he hoped to get preferential treatment as a result of his cooperating with the Government in this case. According to Nave, however, no promise or guarantee of benefits was made by the Government:

A. [T]here was no plea bargain or anything involved in me giving the information. But I really wanted to know what type of institution I was going to myself and whether or not I would be here of close [sic] to my family.

Like I said, there was no deal made with the government for me to give this information.

Q Where is your family located?

A In Los Angeles, California.

Q Were you hoping that, or did you ask this information, the fact that you're cooperating with the government be passed along to the presentence investigators in your case?

A Yes.

Q Were you hoping that this information might be taken into account by the sentencing Judge?

A Yes, I was, due to the fact that me testifying at this trial.

Q So, in other words, you're hoping it would help you out.

A Yes.

Q You've got three prior bank robberies; is that correct?

A Yes.

Q And does the F.B.I. indicate to you, or any other federal official indicate to you whether or not they would pass the information of your cooperation along to the appropriate people?

A They said that the information would be made note of and it would be passed on. But as far as the guarantee of anything being done as a result of it, there wasn't one.

Q Because—is it your testimony here today that no promises have been made to you of any type or form?

A No.

Q They have not.

A No.

(*Id.* at 145–46.)

Taylor's Sixth Amendment claim is based on *United States v. Henry,* 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980) and *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). There is no dispute that Taylor's Sixth Amendment right to counsel had attached because Taylor's statements were made to Nave after Taylor was indicted. *Kirby v. Illinois,* 406 U.S. 682, 688, 92 S.Ct. 1877, 1881, 32 L.Ed.2d 411 (1972). There is also no dispute that Taylor properly sets forth the Sixth Amendment issue on appeal under *Henry* and *Massiah:* "In the instant case the court is confronted with the question of whether or not Wayne Nave was a government agent who deliberately illicited incriminating statements from Anthony Taylor." (*Brief of Appellant,* pp. 4–5.) Therefore, in order to find a violation of a defendant's Sixth Amendment right to counsel, a court must find that defendant's statements (1) were made to a Government agent, and (2) were deliberately elicited.

We hold that Nave was not a Government agent. We also hold that the protections of the Sixth Amendment right to counsel enunciated in *Massiah* and *Henry* are inapplicable when, after the right to counsel has attached, statements by a defendant are made to an individual who is not an agent for the Government, although he may be a Government informant. This is so regardless of whether the statements were "deliberately elicited." *See, e.g., Thomas v. Cox,* 708 F.2d 132, 136 (4th Cir.), *cert. denied,* 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983); *United States v. Metcalfe,* 698 F.2d 877, 882–83 (7th Cir.), *cert. denied,* 461 U.S. 910, 103 S.Ct. 1886, 76 L.Ed.2d 814 (1983); *United States v. Calder,* 641 F.2d 76, 78–79 (2d Cir.), *cert. denied,* 451 U.S. 912, 101 S.Ct. 1984, 68 L.Ed.2d 302 (1981).

We have been unable to find any bright line test for determining whether an individual is a Government agent for purposes of the Sixth Amendment right to counsel. *See e.g., Thomas v. Cox, supra* at 136. This determination must be made under the facts and circumstances of each case, considering factors articulated by certain courts which have reviewed the issue of whether an individual is a Government agent. The Supreme Court in *Henry* implicitly held that a Government informant was an agent because he was paid and acted pursuant to Government instructions. 447 U.S. at 270, 100 S.Ct. at 2186. In *United States v. Calder, supra* at 78–79, however, the court held that no agency was created because the Government and defendant's cellmate who acted as a Government informant did not enter into any agreement. Although the cellmate's attorney had discussed with the United States Attorney the possibility that his client might cooperate, no cooperation agreement was entered into until after the incriminating statements were made by defendant. *Id.* Absent any express or implied agreement with the Government, the court held that Calder's cellmate was not a Government agent and Sixth Amendment protections were therefore not invoked. *See also, United States v. Surridge,* 687 F.2d

250, 254–55 (8th Cir.), *cert. denied,* 459 U.S. 1044, 103 S.Ct. 465, 74 L.Ed.2d 614 (1982).

In *United States v. Franklin,* 704 F.2d 1183, 1189–90 (10th Cir.), *cert. denied,* 464 U.S. 845, 104 S.Ct. 146, 78 L.Ed.2d 137 (1983), we held that under *Henry* and *Massiah,* Franklin's right to counsel was not violated when his statement to a Government informant was neither deliberately elicited nor made to a Government agent. After he was arrested, Franklin contacted his former wife and admitted murdering two joggers. Unknown to Franklin, his former wife had consented to having her telephone tapped by the FBI. Because Franklin's former wife was neither paid nor instructed by the Government, factors which the Supreme Court found significant in *Henry, supra* 447 U.S. at 270, 100 S.Ct. at 2186, she was held not to have acted as a Government agent. *United States v. Franklin, supra.*

In *United States v. Geittmann,* 733 F.2d 1419 (10th Cir.1984), we considered several factors to conclude that an informant was a Government agent. In *Geittmann,* the informant was a co-defendant who entered into a cooperation agreement with the Government to make tape recordings of conversations between himself and Geittmann. The informer began taping the conversations at the request of the Government. Government officials led the informant to believe that his cooperation would be to his advantage. Although the informer was not paid for his services, we held that under these circumstances he was a Government agent, *id.* at 1427, and distinguished the case from one in which independent parties come to the police with unsolicited incriminating information provided by defendants. *Id.,* citing *United States v. Franklin, supra.*

Under the facts of this case, we hold that Nave was not a Government agent. No agreement was made between Nave and the Government and no benefits accrued to Nave for his cooperation. Any benefits which Nave hoped to obtain were mere expectancies. We decline to infer an agreement between the Government and Nave merely from the placement of Taylor in Nave's cell. In the absence of any express or implied *quid pro quo* underlying the relationship between Nave and the Government, *Thomas v. Cox, supra* at 137, and in the absence of any instructions or directions by the Government, we hold that Nave was not a Government agent. Taylor's right to counsel was not violated even if Nave had deliberately elicited incriminating statements from Taylor. Therefore, Nave's testimony regarding Taylor's incriminating statements about the armed robbery was properly admitted in evidence.

## I.

## B.

■ Even if Nave were a Government agent who deliberately elicited the incriminating statements from Taylor, Nave's testimony relative to Taylor's admissions of culpability in the charged crimes would have been admissible due to the failure of defense counsel to properly object.

At trial, Taylor's counsel objected to Nave's testimony as follows:

Q.: Did you have an occasion to talk with Mr. Taylor about two armed robberies, one at the federal credit union or at Communications Federal Credit Union and another one at a savings and loan on Western?

MR. SHORES: To which we will object, your Honor, being no proper predicate laid. This gentleman apparently gone [sic] to work for the government at that point.

THE COURT: Well, that goes to the weight of the evidence rather than the admissibility of it. Overruled. Go ahead.

Q.: (By Mr. Korotash) My question is, did you have a conversation about a couple of bank robberies with Mr. Taylor?

A.: Yes, I did.

Q.: And where did those conversations take place?

A.: In my cell in the Oklahoma County Jail.

Q.: Do you recall when that was?

A.: It was approximately three weeks ago.

Q.: And did Mr. Taylor tell you anything about any bank robberies?

A.: He described to me what had taken place in the robberies and more or less how everything developed to this point.

Q.: All right. What I want you to do is tell the jury the substance of that conversation. I want you to tell the jury what Mr. Taylor said, to the best of your recollection, in a verbatim way, and what you said. O.K.?

MR. SHORES: Repeat—again, your Honor, we will object to the verbatim of any conversation held by this man while he was under the supervision of the government.

THE COURT: Overruled. Go ahead. (R., Supp. Vol. I, pp. 146–48.) The above quoted excerpt of the record constitutes the substance of defense counsel's objection at trial to Nave's proffered testimony.

■ The general rule is that for a party to preserve alleged error for appeal, he must make a timely and *proper* objection. Under the Federal Rules of Evidence, an objection to a ruling admitting evidence is proper when "a timely objection or motion to strike appears of record, *stating the specific ground of objection*, if the specific ground was not apparent from the context...." Fed.R.Evid. 103(a)(1). The specific ground for reversal of an evidentiary ruling on appeal must also be the same as that raised at trial. *Fortier v. Dona Anna Plaza Partners*, 747 F.2d 1324, 1331 (10th Cir.1984). Absent a timely and proper objection, the alleged error will be waived on appeal except when it constitutes plain error resulting in manifest injustice. *United States v. Grismore*, 546 F.2d 844, 850 (10th Cir.1976).

In *United States v. Dysart*, 705 F.2d 1247 (10th Cir.1983), we held that evidentiary objections can be waived, even if they have a constitutional footing, particularly where the basic factual and legal predicate

for them was available. In *Dysart*, we refused to consider specific allegations of error raised for the first time on appeal even though the defendant made a general objection at trial. *Id.* at 1255.

We believe that under the circumstances of this case, the defense counsel's objections at trial were improper because they were general and unclear. The district court's ruling even if erroneous did not constitute plain error. Therefore, even if Nave were a Government agent who deliberately elicited the statements from Taylor, we would hold the statements admissible in this case due to counsel's failure to properly object to Nave's testimony.

## II.

■ Taylor contends that the district court erred in denying his Motion to Sever the trial on the two counts of armed robbery. Taylor contends that he was prejudiced by joinder of the two counts because the jury confused and accumulated the evidence and inferred guilt from the count about which the Government had a stronger case.

Rule 8(a) of the Federal Rules of Criminal Procedure provides that "[t]wo or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged ... are of the same or similar character...." Taylor concedes that it is within the sound discretion of the district court to order separate trials of counts under Rule 14, of the Federal Rules of Criminal Procedure.

We do not believe the district court abused its discretion in denying Taylor's Motion to Sever. We find nothing in the record to support Taylor's contention that the jury was incapable of properly separating the evidence of each robbery as instructed. In addition, we find nothing in the record to support Taylor's contention that the jury accumulated the evidence or inferred guilt from the stronger count.

## III.

Taylor contends that the United States Attorney committed prosecutorial misconduct by his repeated references to the person in the bank as the "defendant" prior to any evidence of identification. Taylor contends that these comments tainted the identification process and infused upon the jury the prosecutor's opinion of Taylor's guilt so as to effectively deny Taylor the presumption of innocence.

 Taylor concedes that the prosecutor's use of the term "defendant" in questioning a witness prior to identification was inadvertent. Likewise, the Government acknowledges that the use of the term "defendant" in questioning was an inadvertent and unfortunate mannerism in the prosecutor's presentation. We have held, however, that prosecutorial misconduct is not *per se* reversible error. We follow the general rule that not all misconduct requires reversal, but rather, it is only when such conduct can be said to have influenced the verdict that it becomes prejudicial. *Devine v. United States,* 403 F.2d 93, 96 (10th Cir.), *cert. denied,* 394 U.S. 1003, 89 S.Ct. 1599, 22 L.Ed.2d 780 (1968).

 Assuming, without deciding, that the prosecutor's use of "defendant" during questioning constitutes prosecutorial misconduct, we hold that the prosecutor's statements did not influence the jury's verdict. The in court identification of Taylor was unequivocal. In addition, the evidence linking him to the two crimes was strong. The evidence clearly supports the verdict and any prejudice from the prosecutor's conduct had little, if any, effect on that verdict.

## IV.

 Taylor contends that he was given ineffective assistance of counsel at trial. Taylor contends that the specific errors made by trial counsel included the following: (1) failure to file pretrial motions *in limine* to limit the nature and extent of the testimony of Wayne Nave; (2) failure to file motions and make proper objections to pretrial identification procedures; and (3) failure to make strategic decisions during the course of trial.

The test for determining whether assistance of counsel is ineffective is clearly set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In *Strickland,* the Supreme Court held that to establish a case of ineffective assistance of counsel, defendant must show that the alleged errors of counsel were so serious as to deprive defendant of a fair trial whose results were reliable. *Id.* 104 S.Ct. at 2064.

We agree with the Government that the alleged errors of counsel did not deprive Taylor of a fair trial. We hold that had counsel performed the way in which Taylor contends was crucial to a fair trial, there would not have been any difference in the evidence offered or the conclusions drawn by the jury.

AFFIRMED.

McKAY, Circuit Judge, dissenting:

I agree with parts II, III and IV of the court's opinion. However, I cannot be consistent with the Supreme Court authority and, at the same time, agree with the majority's handling of the Sixth Amendment issue. Therefore, I must respectfully dissent from part I of the opinion and the result obtained in this case.

After the defendant's Sixth Amendment right to counsel had attached, Mr. Nave, who was incarcerated in a detention facility along with the defendant, saw an opportunity to get some help in obtaining a favorable place for his long-term imprisonment. On his own initiative, according to his account, Mr. Nave summoned to his cell federal officials who were preparing the case against the defendant. There he reported a conversation in which the defendant indicated that he was looking for an alibi. Mr. Nave proposed that he would obtain information from the defendant which would be useful to the prosecution in defendant's upcoming trial, if they would inform the probation service, the presentence service and the judge that he was assisting the

government on Mr. Taylor's case and speak to the judge about his place of incarceration. In direct exchange for that offer, the government agents agreed to tell the authorities that he had cooperated, but they would not guarantee that Mr. Nave would be put in a preferred place of incarceration. The government agents, after having reached this understanding with Mr. Nave, placed the defendant in Mr. Nave's cell to facilitate the scheme.

The record is incomplete regarding Mr. Nave's efforts to gather information from the defendant, but we do know that Mr. Nave and the defendant thereupon had "a *conversation* about a couple of bank robberies...." Record, supp. vol. 1, at 147 (emphasis added). In answer to the question, "And where did those *conversations* take place?" Mr. Nave replied, "In my cell in the Oklahoma City Jail." *Id.* (emphasis added). When the prosecutor asked, "What I want you to do is to tell the jury the substance of that *conversation*," *id.* (emphasis added), Mr. Nave recited at length the incriminating information on which much of this prosecution rests. Though Mr. Nave said, "I didn't pump him for anything," he added, "The *conversation*, I never initiated the *conversation*. The *conversation* was brought to me." *Id.* at 162 (emphasis added). Nowhere in the record is there any indication that the government, which knew that defendant's Sixth Amendment right to counsel had attached, instructed Mr. Nave not to elicit or encourage information in circumvention of that right.

To this whole line of questioning, counsel for defendant objected, saying: "To which we will object, your Honor, as being no proper predicate laid. This gentleman apparently has gone to work for the government at that point." Record, supp. vol. 1, at 147. He further objected, "Repeat— again, your Honor, we will object to the verbatim of any conversation held by this man while he was under the supervision of the government." *Id.* While the majority makes much of counsel's alleged failure to raise specifically the issue, in light of the facts in this case, the objection could have been on no ground other than the Sixth Amendment violation. It is not necessary for counsel to give an essay on the basis of the objection. In my view, it was sufficient for him to indicate that he was objecting because Mr. Nave was an agent of the government. *See United States v. Cummiskey,* 728 F.2d 200, 205 (3d Cir.1984), *cert. denied,* 471 U.S. 1005, 105 S.Ct. 1869, 85 L.Ed.2d 162 (1985).

Because the objection was adequate, two matters remain to be considered. The first concerns the question of the relationship between Mr. Nave and the government when he undertook to have "conversations" with the defendant. In its opinion, the majority focuses its analysis on its determination that the government promised Mr. Nave no consideration for his efforts. The notion of consideration, however, is misplaced in this Sixth Amendment context when discussing agency. It is perfectly clear from reading the facts of such cases as *Kuhlmann v. Wilson,* —— U.S. ——, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986); *Maine v. Moulton,* —— U.S. ——, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985); *United States v. Henry,* 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980); and *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), that all that is required for agency in this context is that the informer, for whatever motivation, seek the information from the defendant pursuant to an understanding reached between the informer and the investigating officers. Nothing in the Supreme Court's opinions establishes that whether an informant is an agent turns on whether the police offer the informant consideration. Indeed, according to *Moulton,* even "knowing exploitation by the State of an opportunity to confront the accused without counsel being present is as much a breach of the State's obligation not to circumvent the right to the assistance of counsel as is the intentional creation of such an opportunity." 106 S.Ct. at 487. The Supreme Court's disregard for archaic notions of consideration is consistent with much of contract law, in which the requirement of considera-

tion has been eliminated. *See, e.g.,* Restatement (Second) of Contracts § 90 (1981); U.C.C. § 2–205 (1977).

In any event, even in a routine contracts case the request for special consideration from the judge about a place of incarceration and a promise to give the good word is more than sufficient consideration either under an academic or a practical view of that notion. Here the government provided such consideration when it agreed to perform a service for the informer and deliberately placed the defendant in his cell in order to carry out this nefarious circumvention of known Sixth Amendment rights. Thus, I conclude that Mr. Nave acted as an agent of the government when he extracted incriminating information from the defendant.

The second matter is determining whether the informer acted only passively or actively in carrying out this scheme to obtain information from the defendant. The only conceivable ground preventing reversal simply on the basis of *Moulton* is any implications which might be drawn from *Kuhlmann v. Wilson,* where the Court stated that

> a defendant does not make out a violation of [his Sixth Amendment] right simply by showing that an informant, either through prior arrangement or voluntarily, reported his incriminating statements to the police. Rather, the defendant must demonstrate that the police and their informant took some action, beyond merely listening, that was designed deliberately to elicit incriminating remarks.

106 S.Ct. at 2630. *Kuhlmann* makes clear that once the police have set about to deliberately bypass Sixth Amendment rights they may be excused if they carefully instruct their informer to avoid precipitating the incriminating statements and if their informer follows those instructions. In my view, once the government has entered into an agreement that may circumvent a defendant's right to counsel, it has the burden to show by a preponderance of evidence that it instructed the informer to be passive and that he followed those instruc-

tions. However, *Kuhlmann* does not save the government's deliberate circumvention of the defendant's Sixth Amendment rights for two reasons.

First, although the facts in *Kuhlmann* are somewhat similar to those in this case, it is clear that the Supreme Court relied on 28 U.S.C. § 2254(d) (1982) to reach its factual determination that the informer did not elicit any information from the defendant. That section provides that state court findings of fact are binding on federal courts in habeas corpus actions. In *Kuhlmann* there was an express state court finding that the informant was instructed only to listen to the defendant, that he followed that instruction, and that the defendant's statements to the informer were spontaneous and unsolicited. However, the facts of our case stand in stark contrast to those judicially established in *Kuhlmann.* Absolutely no instructions were given to restrain Mr. Nave from soliciting, encouraging or otherwise inducing statements by the defendant. Indeed, all this record reveals is that Mr. Nave and the defendant had "a conversation" pursuant to the prior understanding with the police that the informer would use the joint celling as an opportunity to gather information. Neither finding nor fact suggests that the informer was instructed to avoid eliciting or encouraging statements.

Second, it is clear that *Kuhlmann* recognizes that *Moulton* and its predecessors are binding law. 106 S.Ct. at 2629. In *Moulton* the police did not arrange the meeting between the defendant and the informer. Indeed, the meeting had been arranged before the police approached the informer. The police became aware of the already-planned meeting while reaching an agreement with the informer to have him record conversations with the defendant. Furthermore, in *Moulton* the government officials instructed the informant "to be himself," "act normal," and "not interrogate" the defendant. 106 S.Ct. at 488 n. 14.

Nevertheless, the Court held that the informer's conversation violated the de-

fendant's Sixth Amendment rights. As the *Kuhlmann* Court described the illegal conduct in *Moulton*, "[B]ecause of the relationship between the defendant and the informant, the informant's engaging the defendant 'in active conversation about their upcoming trial was certain to elicit' incriminating statements from the defendant.... Thus, the informant's participation in this conversation was 'the functional equivalent of interrogation.'" 106 S.Ct. at 2630 (citations omitted). The Court further explains in *Moulton* that "the Sixth Amendment is violated when the State obtains incriminating statements by knowingly circumventing the accused's right to have counsel present in a confrontation between the accused and the state agent." 106 S.Ct. at 487.

In my view, the *Moulton* test has been met. When Mr. Nave engaged the defendant in active conversation designed to obtain incriminating evidence, the defendant's right to counsel was violated. This violation of Sixth Amendment rights is not trivial. The testimony of this informer was central to an otherwise flimsy case. Without that testimony the defendant very likely would have been acquitted.

In conclusion, the agency analysis as employed by the majority will not bear scrutiny. The *Moulton* line of cases makes abundantly clear that the facts of this case establish a violation of Sixth Amendment rights. An attempt to avoid this violation on the ground that the objection was inadequate simply ignores the fact that the objection could have been based on nothing other than Sixth Amendment grounds and was repeatedly and timely made. Thus, I would reverse the decision of the trial court.