COURT OF APPEALS OF VIRGINIA


Present: Judges Fitzpatrick, Annunziata and Senior Judge Duff
Argued at Alexandria, Virginia


ATIF BEYAH SALEEM
                                             OPINION BY
v.      Record No. 1823-95-4         JUDGE CHARLES H. DUFF
                                          JANUARY 14, 1997
COMMONWEALTH OF VIRGINIA


        FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
                Herman A. Whisenant, Jr., Judge


        Robert W. King, Jr., for appellant.

        John H. McLees, Jr., Assistant Attorney General
        (James S. Gilmore, III, Attorney General, on
        brief), for appellee.


     In a bench trial, Atif Beyah Saleem (appellant) was found

guilty of robbery and the use of a firearm in the commission of

robbery.  Appellant contends on appeal that the trial court

should have suppressed the statements he made to inmate Darryl

Watkins because the statements were obtained in violation of his

Sixth Amendment right to counsel.  Appellant further argues that

the evidence was insufficient to support his convictions.

Finding no error, we affirm the convictions.

     "On appeal, we review the evidence in the light most

favorable to the Commonwealth, granting to it all reasonable

inferences fairly deducible therefrom."  Martin v. Commonwealth,

4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

     On September 5, 1994, Lisa Mays was working as a cashier at

Market Street restaurant in Woodbridge.  At closing time, she

took the cash register drawer to the office to total the proceeds from the day and to perform paperwork. When she reached the office door, she was confronted by a man wearing a ski mask and pointing a gun at her. The man was short and stocky and wore black pants with a "bluish green" shirt. While Mays stood still, another man approached her from behind, pushed her into the office, and shut the door. The second man was taller and thinner than the first, was dressed all in black, wore a ski mask, and carried a handgun. Both men wore rubber gloves.

After the office door was shut, the men pointed with their guns to the cash register drawer and then down at a bag. The shorter of the two men took the money from the drawer, which totalled $2,300, and put it in the bag. The shorter man then pointed to the floor with his gun. Mays responded by lying face down on the floor. One of the men pressed a gun against Mays' back "real hard." Before the two men left, Mays saw the shorter man place his finger to his lips, which Mays interpreted as a command for her to remain quiet. As soon as she was certain the men were gone, Mays fled the office and contacted the police. The back door of the restaurant was later discovered unlocked.

No words were spoken during the robbery. Mays testified that she knew appellant and could recognize his voice because he had worked as a cook at Market Street. Appellant was no longer employed at the restaurant on the day of the robbery. The procedure conducted at the close of business at Market Street was

-2-

common knowledge among the restaurant employees.

At trial, the Commonwealth introduced the testimony of Watkins, who had been incarcerated with appellant prior to trial. Watkins testified that appellant told him the charge against him was the product of "entrapment" because during the robbery he was behind "this woman" with a gun, and that now she was saying she could identify him by his voice. Appellant told Watkins he had been wearing a mask, and he wondered how the woman could identify him because he had not spoken much during the robbery. Appellant also said he used to work at "The Market" restaurant, that he knew what time the money would be brought to the office, that he and a "young guy" waited in the office for a woman to bring in the cash register drawer, and that they had left the restaurant by the back door. Appellant said about $2,000 was taken in the robbery.

Appellant presented the testimony of two other inmates, who maintained that the conversation between appellant and Watkins had not occurred.

## I.

At a hearing on appellant's motion to suppress, the Commonwealth presented evidence of the circumstances surrounding appellant's statement to Watkins. Watkins testified that he was sentenced on several felony convictions in September 1994, and had been serving his nine year sentence in the jail since that time. In January 1995, Detective Anthony Spencer visited

Watkins, who previously had asked to be moved to a different building. Spencer told Watkins that, while Watkins was in the other building, if "[he] hear[d] someone speaking about a case[,]" to "keep [his] ears open" and "get back with" Spencer. Spencer mentioned several specific cases, including a robbery case involving "Atif." However, Spencer did not tell Watkins any details about the robbery at the restaurant.

Watkins agreed to do as Spencer requested. Watkins was promised nothing in return for supplying information to the police, and had received no consideration at the time of the suppression hearing or the trial. Although he had been promised nothing, Watkins said he "hoped" some of his court costs would be "paid out of this."

A few days after his conversation with Spencer, Watkins was transferred to the building he had requested and was assigned to appellant's cellblock. Watkins had little conversation with appellant until late the following evening when Watkins, appellant, and other inmates were watching television together. Appellant stated spontaneously that his own case was similar to the television program they were watching, which involved what the inmates perceived as entrapment techniques used by the police. Appellant said although he had worn a mask, a woman supposedly could identify him by his voice. Appellant said he could not understand how he could have been identified because he had not spoken much during the robbery. During an ensuing

-4-

conversation involving Watkins, appellant revealed further details of the offense.

When Watkins subsequently reported this information to Spencer, Spencer did not promise Watkins any consideration in exchange.  Watkins later was transferred out of the building where appellant was housed.

Appellant contends that his Sixth Amendment right to counsel was violated because Watkins, while acting as a government agent, deliberately elicited statements from him after indictment and in the absence of his attorney.  The United States Supreme Court has "recognized a suspect's need to have counsel present during in-custody conversations with government informants."  Lafon v. Commonwealth, 17 Va. App. 411, 422, 438 S.E.2d 279, 286 (1993) (citing United States v. Henry, 447 U.S. 264 (1980)).

> The Sixth Amendment guarantees the accused, at least after the initiation of formal charges, the right to rely on counsel as a "medium" between him and the State. . . . [T]his guarantee includes the State's affirmative obligation not to act in a manner that circumvents the protections accorded the accused by invoking this right.

Maine v. Moulton, 474 U.S. 159, 176 (1985).  To constitute a violation of the suspect's Sixth Amendment right to counsel, "the statements in question must have been (1) deliberately elicited (2) by a government agent."  United States v. Li, 55 F.3d 325, 328 (7th Cir. 1995).  Both of these prongs must be satisfied in order for a Sixth Amendment violation to result.  See United States v. Taylor, 800 F.2d 1012, 1015 (10th Cir. 1986), cert.

-5-

denied, 484 U.S. 838 (1987).

The determination of whether an informant was acting as a government agent turns upon "the facts and circumstances of each case." Id. "[T]he protections of the Sixth Amendment right to counsel . . . are inapplicable when, after the right to counsel has attached, statements by a defendant are made to an individual who is not an agent for the Government, although he may be a Government informant." Id. An important component in determining whether an informant was also a government agent is the benefit the informant was promised as part of his agreement to provide information to the police. See Moulton, 474 U.S. at 163 (informant received sentencing consideration upon pending charges); Henry, 447 U.S. at 266 (informant paid for useful information given to police). See also Thomas v. Cox, 708 F.2d 132, 134-35 (4th Cir.), cert. denied, 464 U.S. 918 (1983).

In a factual situation similar to the present case, the Tenth Circuit of the United States Court of Appeals observed:

> No agreement was made between [the informant] and the Government and no benefits accrued to [the informant] for his cooperation. Any benefits which [the informant] hoped to obtain were mere expectancies. We decline to infer an agreement between the Government and [the informant] merely from the placement of [the defendant] in [the informant's] cell. In the absence of any express or implied quid pro quo underlying the relationship between [the informant] and the Government, and in the absence of any instructions or directions by the Government, . . . [the informant] was not a government agent.

Taylor, 800 F.2d at 1016 (citation omitted). In fact, the

motives of an informant "cannot make him an agent of the police even if the police knew and understood that his motives probably were self-serving and related to getting police cooperation in his own case."  Lightbourne v. Dugger, 829 F.2d 1012, 1021 (11th Cir. 1987), cert. denied, 488 U.S. 934 (1988).

In the present case, the evidence was uncontroverted that Watkins was promised, and he received, nothing in exchange for gathering information for the police.  The only suggestion of a benefit to Watkins was his own statement that he "hoped" some of his court costs would be paid.  Watkins' wishful thinking, however, did not create an agreement with Spencer that otherwise did not exist.  Furthermore, although Spencer asked Watkins to keep his "ears open" about the robbery, Spencer did not instruct Watkins how to gain information about the offense, nor did he tell Watkins to question appellant.

Under these circumstances, we find that Watkins was not a government agent when appellant made the statements to him. Because one of the necessary prongs did not exist, appellant's Sixth Amendment right to counsel was not violated and the statements were admissible.  For this reason, we need not decide whether Watkins deliberately elicited the statements from appellant.

## II.

Appellant argues that the trial court should have rejected Watkins' testimony because Watkins' description of his

conversation with appellant was not credible. However, "[t]he weight which should be given to evidence and whether the testimony of a witness is credible are questions which the fact finder must decide." Bridgeman v. Commonwealth, 3 Va. App. 523, 528, 351 S.E.2d 598, 601 (1986).

Appellant's description of the robbery to Watkins was consistent, in all significant respects, with Mays' testimony about the incident. According to appellant's statement, he and another man, while both were masked and armed, robbed a woman at "The Market" restaurant, where appellant previously had been employed. Mays corroborated all of these details. Appellant told Watkins he had not spoken "much" during the robbery so the woman could not identify his voice. Indeed, by maintaining silence appellant prevented Mays, who was familiar with his voice, from later identifying him. Appellant told Watkins he had left the restaurant by the back door, which was discovered unlocked after the robbery. The amount of money appellant told Watkins he obtained in the crime was nearly the same as that actually taken during the robbery. Furthermore, the circumstances strongly suggested that the robbery was committed by someone with knowledge of the restaurant's procedures, such as a former employee.

Considering these facts, the evidence was sufficient to prove beyond a reasonable doubt that appellant committed the robbery and the associated firearm offense. Thus, the trial

judge did not err in refusing to strike the evidence.

For the foregoing reasons, we affirm appellant's convictions.

<u>Affirmed</u>.