**Samuel Dean DEVINE, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 10006.**

United States Court of Appeals
Tenth Circuit.

Oct. 23, 1968.

Rehearing Denied Dec. 23, 1968.

Joseph R. Schlozman, Kansas City, Mo., for appellant.

Thomas E. Joyce, Asst. U. S. Atty., Kansas City, Kan. (Benjamin E. Franklin, U. S. Atty., Kansas City, Kan., on the brief), for appellee.

Before PICKETT, BREITENSTEIN and HILL, Circuit Judges.

HILL, Circuit Judge.

■ Appellant was convicted by a jury on both counts of a two count indictment charging him with having, on or about April 15, 1966, transported altered, forged or falsely made securities in interstate commerce in violation of 18 U.S.C. §§ 2 and 2314. The forged securities consisted of two checks drawn on the account of Maynard C. Raybourn in a Kansas City, Missouri bank. The checks having been cashed in the State of Kansas, their transportation via banking channels to the drawee bank in Missouri is sufficient to satisfy the interstate aspect of the indictment.

Appellant and an accomplice, Edward G. Parsons, were tried jointly while another accomplice and coindictee, Edward B. Henney, Jr., pleaded guilty before becoming a witness for the prosecution. A third accomplice, Dorothy L. Evans, had previously entered a plea of guilty in a separate criminal action based upon the same conduct as herein involved. She too became an important witness for the Government. Thus faced with the extremely damaging testimony of these two accomplices, appellant purportedly sought to establish as an affirmative defense that the drawer, Maynard Raybourn, had himself signed the checks albeit with a deliberate signature distortion. It was felt that if this affirmative defense could be shown, the checks would then not have been forged and the indictment would fail.

In his attempt to establish the defense, appellant called the drawer, Maynard Raybourn, to the witness stand and also introduced a report of an F.B.I. handwriting expert. The report stated, among other things, that: "Because of the possibility of deliberate distortion causing the deviations, a definite conclusion [as to establishing a forgery] was not reached in this respect." The only other evidence offered by appellant consisted of the testimony of an acquaintance of Edward Henney, Jr., who testified as to the latter's reputation in an attempt to impeach his credibility as a witness for the Government.

Appellant contends that the court erred in failing to properly instruct the jury as to the theories propounded by the defense. It is urged that in refusing to instruct the jury that "one cannot forge his own signature" the court neglected to take cognizance of a valid theory; a theory for which evidence had been introduced either directly or elicited on cross-examination of Government witnesses. The issue thus becomes whether the court committed prejudicial error in the omission of the aforementioned instruction.

We have examined the record and find that the instruction was not given either in form or in substance. As to what constituted a forged security, the court did adopt the instruction submitted by appellant except that the last sentence stating that one cannot forge his own signature was omitted. Nonetheless, it is elementary that a defendant in a criminal case is entitled to instructions delineating a particular theory of defense only if there is a sufficient foundation in the evidence. There must be "evidence before the jury to reasonably support such theory." [1]

While it appears from an analysis of the record that the court could have given the requested instruction, it cannot be said that there was enough evidence to positively require that it be given. The theory that the checks were signed by the true maker was not fairly raised by the evidence. Aside from the report of the F.B.I. indicating that it was not possible to definitely rule out a deliberate distortion by the drawer—if indeed such a contingency could ever be definitely negated—the only other pertinent evidence consisted of the testimony of the drawer, Maynard Raybourn, to the effect that conceivably there could have been checks left unattended that had been signed but otherwise left blank. It is self-evident that this type of evidence, premised upon the universal truth that nearly anything is possible, can hardly be said to constitute an evidentiary foundation upon which to base the request for jury instructions.

Appellant further contends that the court committed reversible error in the failure to give another requested jury instruction. This instruction related to the efficacy of the testimony introduced to impeach the credibility of Edward Henney, Jr., as a witness for the Government. However, the sufficiency

1. Beck v. United States, 305 F.2d 595, 599 (10th Cir. 1962); Jones v. United States, 251 F.2d 288 (10th Cir. 1958); and Belton v. United States, 382 F.2d 150 (D.C. Cir. 1967).

of jury instructions is not determined by the giving or failing to give any one particular instruction. In order to make such a determination it is necessary that all of the instructions be viewed as a whole.[2] Once this has been accomplished, it becomes apparent that the general instructions relating to the weight to be given the evidence and the credibility of witnesses were adequate in apprising the jury as to the significance of the impeachment testimony. Even if we were to conclude that the instruction should have been given, it seems apparent that the court's failure to have done so would certainly not be sufficiently prejudicial to warrant a reversal.

The final contention on appeal directs attention to a remark made by the Assistant United States Attorney during the course of the trial. In his summation to the jury he stated: "Now, ladies and gentlemen of the jury, they intimated that the Government oughtn't [sic] to be prosecuting this case. If I had any idea that these people were innocent, I would dismiss this case." The statement was promptly objected to as being prejudicial misconduct; the court admonished the jury not to consider the opinions of counsel; and the case proceeded.

█ It cannot be doubted that statements expressing an advocate's personal belief in the merits of the case are to be deplored as constituting conduct beyond the scope of legitimate argument.[3] Furthermore, when such statements are made by a representative of the Government they acquire additional significance because of the position of public trust occupied by the speaker. This fact has caused some courts to hold this to be an instance of *per se* reversible error.[4] Other courts condone the expression of an individual belief in the guilt of the accused as long as the jury is not led to believe that there is other evidence, unknown or unavailable to the jury, upon which the belief in the guilt of the accused is based.[5] Indeed, in a case remarkably similar to the case at bar, the court applied this rule in finding that such statements did not constitute prejudicial error.[6]

█ We prefer, however, to refrain from adopting a rule that would unfailingly govern instances of this type. Instead, each case must be examined independently with a view toward ascertaining whether there is reason to believe that the statement affected the ultimate verdict of the jury. This then is simply an application of the general rule that not all misconduct requires reversal, but rather, it is only when such conduct can be said to have influenced the verdict that it becomes prejudicial.[7] Following this approach, we have determined that in view of the admonition by the court, the jury was not unduly affected by the statement made.

█ We conclude that it was convincingly demonstrated that the checks in question were made out in the apartment of the appellant and in the presence of the accomplices who testified accordingly. It was also shown that after having forged the checks, the appellant and his cohorts proceeded to drive about the

---

2. Beck v. United States, 305 F.2d 595, 599 (10th Cir. 1962); Speers v. United States, 387 F.2d 698 (10th Cir. 1967).

3. "It is improper for a lawyer to assert in argument his personal belief in the client's innocence or in the justice of his cause." Canon 15 of Canons of Professional Ethics of the American Bar Association; United States v. White, 324 F.2d 814 (2d Cir. 1963).

4. Greenberg v. United States, 280 F.2d 472 (1st Cir. 1960).

5. Gradsky v. United States, 373 F.2d 706 (5th Cir. 1967); McMillan v. United States, 363 F.2d 165 (5th Cir. 1966), citing Henderson v. United States, 218 F.2d 14, 50 A.L.R.2d 754 (6th Cir. 1955), cert. den. 349 U.S. 920, 75 S.Ct. 660, 99 L.Ed. 1253.

6. United States v. Battiato, 204 F.2d 717 (7th Cir. 1953), cert. den. 346 U.S. 871, 74 S.Ct. 118, 98 L.Ed. 380.

7. Marks v. United States, 260 F.2d 377 (10th Cir. 1958).

countryside passing the checks from place to place. The record thus discloses ample evidence to support the jury verdict.

Affirmed.