James William **BAILEY**, Appellant,

v.

**UNITED STATES** of America, Appellee.

Sidney **ROLLS**, aka Sidney Ross, Appellant,

v.

**UNITED STATES** of America, Appellee.

Gary Lee **WILSON**, Appellant,

v.

**UNITED STATES** of America, Appellee.

Leonard Leroy **CANN**, Appellant,

v.

**UNITED STATES** of America, Appellee.

Robert **FREEMAN**, Jr., Appellant,

v.

**UNITED STATES** of America, Appellee.

Nos. 9795–9798, 10025.

United States Court of Appeals Tenth Circuit.

May 16, 1969.

Rehearing Denied in No. 10025 June 11, 1969.

See also, D.C., 262 F.Supp. 331.

Stephen J. Mermigis, Kansas City, Kan., for appellant, James William Bailey.

Robert J. Foster, Kansas City Kan., for appellants, Sidney Rolls and Leonard Leroy Cann.

Bill Yockey, Kansas City, Kan., for appellant, Gary Lee Wilson.

James H. Paddleford, Oklahoma City, Okl., for appellant, Robert Freeman, Jr.

Benjamin E. Franklin, U. S. Atty., Topeka, Kan. (John R. Martin, Asst.

U. S. Atty., with him on the brief), for appellee.

Before MURRAH, PICKETT and HOLLOWAY, Circuit Judges.

PICKETT, Circuit Judge.

During the evening of November 19, 1966, Carolyn E. Jackson, a 19-year-old housewife, was seized from the parking lot at St. Luke's Hospital in Kansas City, Missouri by a group of young Negroes and taken by automobile to Kansas City, Kansas where she was raped by various individuals. Within a few days James William Bailey, Evage James Howard, Robert Dan Sharp, Sidney Rolls, aka Sidney Ross, Gary Lee Wilson and Leonard Leroy Cann were taken into custody by the Kansas City, Kansas police on a charge of rape. On January 12, 1967 a Federal Grand Jury returned an indictment charging these individuals and Robert Freeman with kidnaping Carolyn E. Jackson and transporting her in interstate commerce from Kansas City, Missouri to Kansas City, Kansas for sexual gratification in violation of 18 U.S.C. § 1201.[1] All of those accused in the indictment except Freeman were tried jointly. Howard and Sharp were acquitted, but Bailey, Rolls, Wilson and Cann were convicted and sentenced to life imprisonment. Freeman was not apprehended until later. He was convicted at a separate trial and sentenced to life imprisonment. Separate appeals were taken, all of which will be considered in this opinion.

The trial evidence showed that Mrs. Jackson had been visiting her husband who was confined in the St. Luke's Hospital in Kansas City, Missouri. She left the hospital at approximately 9:40 p. m. and proceeded to the multi-decked parking lot maintained by the hospital. After she entered her automobile preparatory to returning home, a man entered the car and seized her. With the assistance of another man, Mrs. Jackson was forcibly removed from her automobile and transferred to the car driven by the abductors where she was held on the floor between the front and rear seats. The automobile was driven to a small five-room, shack-like, dilapidated house in Kansas City, Kansas in which four Negro men resided. The locked door to this house was forced open and the victim was removed from the automobile and taken inside. Herbert Brown, one of the occupants was "pulled out of" the bed on which he was sleeping and told to leave the room. Mrs. Jackson was thrown upon the bed and raped numerous times. Later, she was taken to an old vacant house in the same area, where the abuse continued. The victim testified that at the two places she was raped at least fourteen times. Thereafter, while in the same automobile that had been used in the prior transportation, she was compelled to have unnatural relations with two of her assailants. Approximately two hours after the incident at the hospital, the victim was released on a Kansas City, Kansas street and the group fled. She found her way to a home and the police were notified.

While being held by state officers under a state charge, Rolls was interrogated by agents of the F.B.I. and admitted his participation in the abduction and the rape. He signed a written statement to that effect. Wilson and Cann made oral statements admitting that they took part in the abduction and the rape. Additional facts will be referred to in the consideration of the various assignments of error.

Following the return of the indictment, the district court denied motions by individual defendants for separate trials.

1. 18 U.S.C. § 1201(a) provides:
"Whoever knowingly transports in interstate or foreign commerce, any person who has been unlawfully seized, confined, inveigled, decoyed, kidnaped, abducted, or carried away and held for ransom or reward or otherwise, except. in the case of a minor, by a parent thereof, shall be punished (1) by death if the kidnaped person has not been liberated unharmed, and if the verdict of the jury shall so recommend, or (2) by imprisonment for any term of years or for life, if the death penalty is not imposed."

The trial court found that there were no inconsistencies in the several defenses which would prejudice the defense of others in a trial. As authorized by the 1966 amendment to Rule 14, Fed.R.Crim. P., the court examined the written confession of Rolls and deleted therefrom all references to the names, descriptions and places of residence of any person other than Rolls mentioned therein as having participated in the alleged crime. Furthermore, at proceedings to determine the voluntariness of the oral incriminating statements of Wilson and Cann, the court, to prevent prejudice to other defendants and the possibility of a mistrial, ordered that witnesses testifying to these oral statements should not repeat to the jury any references made by Wilson or Cann to the participation of any other defendant in the case. There was strict observance of this order during the trial.[2]

■ Rule 8(b), Fed.R.Crim.P., provides that "Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count." Defendants charged jointly in an indictment are not entitled to separate trials as a matter of right. The granting of a separate trial is discretionary with the trial court. Opper v. United States, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101; Glass v. United States, 10 Cir., 351 F.2d 678;

Walton v. United States, 10 Cir., 334 F.2d 343, cert. denied, 379 U.S. 991, 85 S.Ct. 706, 13 L.Ed.2d 612; Baker v. United States, 10 Cir., 329 F.2d 786, cert denied, 379 U.S. 853, 85 S.Ct. 101, 13 L.Ed.2d 56. Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476, is not to the contrary. We find no abuse of discretion in the denial of the several motions for a severance.

Rolls moved to suppress his written and oral statements upon the grounds that they were coerced and obtained without adequate advice as to his constitutional rights. After a full evidentiary hearing, the court found that Rolls' statements had been given voluntarily and without coercion, and that he had been advised of all of his constitutional rights, including his right to counsel.[3]

■ F.B.I. agents testified that prior to any interrogation Rolls was informed of his rights and a waiver statement was read to him; that he signed a waiver before making or signing an incriminating statement. The warnings given Rolls satisfied constitutional standards. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

■ The waiver signed by Cann at the time his oral statement was made indicates that it was signed by him after the statement was given.[4] Cann testified that this waiver was not read to him nor signed until after he had made the statement. Two F.B.I. agents testified that prior to interrogation Cann was fully advised of his right to counsel and to the other rights contained in the written waiver, and that the written waiver itself was signed prior to interrogation.

2. The record demonstrates that the court and the prosecution were extremely diligent during the trial because of the revolting nature of this crime to avoid as far as possible all conduct and incidents which might produce bias or prejudice against the defendants.

3. The record shows that Rolls consulted an attorney, and with the cooperation of his attorney had a conversation with his grandmother on the telephone prior to making any statement. The written statement contains this question and answer: "Q. Have you consulted with your attorney? A. Yes I consulted with my attorney, Bob Feiring."

4. The agent's notes show that the interview began at 3:49 P.M. and concluded at 4:36 P.M. In the spaces provided on the waiver form the times 5:02 P.M. and 5:13 P.M. appeared. The agent who inserted the time on the form explained the discrepancies as a mistake.

The conflict in this evidence was one to be resolved by the trial court. Thomas v. United States, 10 Cir., 394 F.2d 247. The error as to the time of the waiver as shown on the form itself was not fatal.

We find no error in the admission in evidence of the oral statements made by Wilson and Cann to the agents of the F.B.I. Their admissibility was determined after an evidentiary hearing before the trial court. The agents testified that prior to interrogation each was advised that he must understand his rights before any questions were asked; that each was told that he had a right to remain silent and that anything he might say could be used against him in court; that he had a right to the advice of an attorney before answering any questions; that if he could not employ an attorney, one would be appointed for him before questioning; and that at any time during the questioning, he might discontinue his answers and until such time as he had advice of counsel. The agents testified that immediately thereafter and before questioning, Cann executed a waiver of those rights.[5]

■ Prior to interrogating Wilson, the F.B.I. agents testified that warnings similar to those given Cann were related to Wilson. At the hearing on the admission of his statements, Wilson testi-fied that he did not remember what was said in the conversation he had with the F.B.I. agents on December 1, 1966, but that prior thereto he had talked to his attorney. There is also evidence that he had talked to his father and other relatives prior thereto. The record fully supports the court's finding that the statements made by Wilson were not coerced in any manner and were voluntary.[6] The warnings and waivers referred to were obviously patterned to conform to the principles of Miranda v. Arizona, *supra*, and were in accordance with established constitutional requirements.

■ We are satisfied that the evidence is sufficient to support the convictions of Rolls, Cann, and Wilson.

■ During closing argument, counsel for the Government made certain questionable remarks[7] which were objected to by defense counsel. The court sustained the objection and very carefully admonished the jury to disregard the remarks. This court has recently reiterated that unless misconduct on the part of the prosecution can be said to have influenced the jury's verdict, reversal will not be required. Devine v. United States, 10 Cir., 403 F.2d 93. Ordinarily, such error may adequately be cured by striking the objectionable re-

5. The form used reads as follows:
"Before we ask you any questions, you must understand your rights.
"You have the right to remain silent.
"Anything you say can be used against you in court.
"You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.
"If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.
"If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.
"WAIVER OF RIGHTS
"I have read this statement of my rights and I understand what my rights

are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me."

6. In addition to the court's finding, the issue of voluntariness was submitted to the jury with an instruction to disregard the statements made by Rolls, Cann and Wilson if the jury found them to be involuntary. *Cf.* Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908.

7. Counsel's statements were: "Now this is a terrible crime. It could happen to your wife, your child, not only in the Kansas City community, but anywhere in the United States. We read the newspapers. Crime is increasing on the streets."

marks and admonishing the jury to disregard them. Aiuppa v. United States, 10 Cir., 393 F.2d 597; vacated on other grounds, Giordano v. United States, 394 U.S. 310, 89 S.Ct. 1164, 22 L.Ed.2d 297. The subsequent acquittal of two defendants illustrates that the statements did not influence the jury's verdict, and that the court's admonition was effective and cured any prejudice caused by the remarks.

■ We agree with the trial court that an incident involving an alleged interference with the jury was not grounds for a mistrial. The jury was accosted upon leaving the courthouse by several individuals who, among other things, urged the jury to free the defendants. Although it appears that the members of the jury had asked for protection at the time, upon inquiry by the court after the submission of the jury's verdict, the jury uniformly denied that they had been intimidated or that the incident had in any way influenced their verdict. This court has said: "The result of the contacts upon the jurors sitting in this case is the criterion to be applied in determining whether there was an impingement upon the right of the appellant to be tried before a fair and impartial jury." Rubenstein v. United States, 10 Cir., 227 F.2d 638, at 643; cert. denied, 350 U.S. 993, 76 S.Ct. 542, 100 L.Ed. 858. The results of the trial disclose that the jury discounted this incident and performed its duty free from external pressure.

■ Appellant Bailey vigorously attacks the sufficiency of the evidence to connect him with the offense charged. It is true that the identification of Bailey by the victim was uncertain as to his participation in the crime, but her testimony was positive that "he was there that night." Identification of any of the assailants by Mrs. Jackson was made difficult because from the time of her seizure until she was released, an attempt was made to keep her head covered with a coat, but at times she could see. Our question is whether the evidence, direct and circumstantial, viewed in the light most favorable to the prosecution, together with the reasonable inferences to be drawn therefrom, is sufficient to support the jury's verdict. In Corbin v. United States, 10 Cir., 253 F.2d 646, at 649, we said:

"Substantial evidence is more than a scintilla. It must do more than create a suspicion of the existence of the fact to be established. We must consider the case as a whole and not piecemeal. The lines of proof must be considered together, not separately. Even if each line of proof taken by itself is of insufficient probative force, the conclusion does not necessarily follow that the proof taken as a whole is insufficient. The lines of proof interweave and support each other."

The record discloses that when Mrs. Jackson was seized at the hospital in Kansas City, Missouri, the automobile in which she was placed was driven directly from there to a house on Minnie Street in Kansas City, Kansas. The victim estimated that it took approximately twenty minutes to make this trip. Other evidence indicated that the time required to cover this distance was at least thirty minutes. The automobile left the hospital shortly after 9:40 P.M. and arrived at the Minnie Street house between 10:00 and 10:30 P.M. At the time of arrival the house was occupied by two older men named Smith and Brown, who were asleep in their rooms. These men were friends of Bailey, and he was a frequent visitor to the house and often spent the night there. When the group arrived at the house with Mrs. Jackson, she was removed from the automobile, the lock on the house door was broken, and she was taken into the room occupied by Brown. Brown was "pulled out of" the bed and from there went into the room occupied by Smith. Smith was awakened and both heard voices in Brown's adjoining room, one of which was that of a female. Within a short time Bailey entered the room where Smith and Brown were and visited with them briefly. Bailey then returned to Brown's room, and a short time thereafter the entire group left with the girl. A subsequent investi-

gation disclosed Bailey's fingerprints on a mirror in the room where the girl was raped.

■■■■ Circumstantial evidence need not exclude every hypothesis nor negative any possibility other than guilt. Thomas v. United States, 10 Cir., 394 F.2d 247, and cases cited. The evidence must, however, have sufficient probative value of guilt beyond a reasonable doubt to justify submission to a jury. Early v. United States, 10 Cir., 394 F.2d 117, cert. denied, 393 U.S. 1003, 89 S.Ct. 492, 21 L.Ed. 2d 467. If the cumulative effect of the evidence was adequate to support an inference that Bailey participated in the seizure and transportation of Mrs. Jackson from Missouri to Kansas, it is sufficient to go to the jury. Summarized the evidence shows that Bailey, through frequent visits to the house on Minnie Street, knew its location and the character of its occupants; he was not in the house when the abductors arrived with Mrs. Jackson; the automobile transporting the victim arrived at the house twenty to thirty minutes after it left the hospital in Missouri without a prior stop; Bailey was not only in the house while Mrs. Jackson was there, but was in the room where she was being raped immediately after the arrival of the automobile and the forcible entry into the house; during the assaults upon Mrs. Jackson, Bailey left that room to visit briefly with his friends who lived there; he returned to the room, and he was not in the house after the victim was taken away; his friends did not report the hideous incident to the police after Bailey left the house. We think this evidence shows more than mere presence at the scene of the crime and establishes a basis from which the jury could reasonably infer that Bailey arrived at the Minnie Street house in Kansas City, Kansas in the automobile with those who seized Mrs. Jackson at the hospital in Kansas City, Missouri and had accompanied them from the beginning.

The basic facts in the Freeman trial were substantially the same as those in the trial of the other defendants named in the indictment with the exception that Mrs. Jackson identified Freeman as the driver of the automobile that took her from the hospital in Missouri to the Minnie Street house in Kansas City, Kansas. In addition, there was evidence that immediately after the kidnaping Freeman left the Kansas City area and was located several months later in Cleveland, Ohio.

Freeman does not challenge the sufficiency of the evidence to sustain the conviction, but asserts that the court erred:

1. in denying a motion to dismiss the indictment because of the alleged unconstitutionality of the Federal Kidnaping Statute, 18 U.S.C. § 1201(a), and because of the failure of the indictment to inform the accused of the offense which was in violation of the aforesaid statute;

2. by admitting photographs of Mrs. Jackson after the alleged crime; and

3. in its instruction on intentional flight after the crime.

We find no merit in any of these assignments of error.

■■■■ Section 1201(a) provides that one found guilty of kidnaping as defined therein, "shall be punished (1) by death if the kidnaped person has not been liberated unharmed, and if the verdict of the jury shall so recommend, or (2) by imprisonment for any term of years or for life, if the death penalty is not imposed." In United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138, the Supreme Court held the death penalty clause of the statute unconstitutional because it imposed an impermissible burden upon the exercise of the constitutional right to a jury trial. The Court, however, left "the statute an operative whole, free of any constitutional objection", with no limitations on prosecutions for violation of the Act except that the death penalty could not be invoked. The jury not having recommended the death penalty, the *Jackson* case is decisive. Robinson v. United States, 6 Cir., 394 F.2d 823.

■■■■ In the attack upon the sufficiency of the indictment, it is asserted

that the accused was not adequately advised of the charges against him. The indictment alleges that Mrs. Jackson was kidnaped "and" held for ransom or reward or otherwise, to-wit, sexual gratification, and * * * was not liberated unharmed * * *." In addition to alleging the offense in the language of the statute, the indictment stated the purpose of the kidnaping. It clearly was adequate and not misleading. United States v. Bentley, 6 Cir., 310 F.2d 685. See, Mims v. United States, 10 Cir., 332 F.2d 944, cert. denied, 379 U.S. 888, 85 S.Ct. 158, 13 L.Ed.2d 92; Cathcart v. United States, 10 Cir., 244 F.2d 74, cert. denied, 354 U.S. 924, 77 S.Ct. 1387, 1 L.Ed.2d 1439. The purpose of the kidnaping need not be for reward or pecuniary gain. United States v. Healy, 376 U.S. 75, 84 S.Ct. 553, 11 L. Ed.2d 527.

■ It is urged that the court erred in the admission of two photographs of Mrs. Jackson taken a few days after the assault upon her. There was nothing unusual about the pictures, one being of the face of Mrs. Jackson, the other of her face and one arm. No objection was made on the ground that they were not good likenesses. It is said that the exhibits "tended to inflame the minds of the jurors because of the appearance of bruises and scratches.". With the exception of a small abrasion on one arm, no bruises or scratches were shown. Nothing about the photographs was inflammatory and they were simply used by some witnesses to identify Mrs. Jackson. If there was a lack of proper foundation for admission, the error did not affect substantial rights of the accused and was harmless. Rule 52(a), Fed.R.Crim.P.

■ The evidence is without conflict that two days after the crime had been committed, Freeman learned that one of his friends had been arrested. He immediately left his place of employment and was not seen in the Kansas City area thereafter. When he was arrested in Cleveland, Ohio in August, 1967 he denied that he was the Robert Freeman wanted in Kansas. The court instructed the jury as follows:

"The intentional flight or concealment of a defendant immediately after the commission of a crime or after he is accused of a crime that has been committed, is not, of course, sufficient in itself to establish his guilt; but is a fact which, if proved, may be considered by the jury in the light of all other evidence in the case in determining guilt or innocence. Whether or not evidence of flight or concealment shows a consciousness of guilt and the significance to be attached to any such evidence, are matters exclusively within the province of the jury."

This instruction is adequately supported by the evidence (It is the suggested instruction on flight apearing at 27 F.R.D. 58), and its substance has heretofore been approved by this court. Osborn v. United States, 10 Cir., 391 F.2d 115; Kreuter v. United States, 376 F.2d 654, cert. denied, 390 U.S. 1015, 88 S.Ct. 1267, 20 L.Ed.2d 165.

Affirmed as to all appellants.