# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Oscar Fortune, Petitioner,

v.

State of South Carolina, Respondent.

Appellate Case No. 2016-002231

_____

## ON WRIT OF CERTIORARI

_____

Appeal from Chesterfield County
John M. Milling, Trial Court Judge
Paul M. Burch, Post-Conviction Relief Judge

_____

Opinion No. 27932
Submitted October 15, 2019 – Filed December 4, 2019

_____

## REVERSED

_____

Elizabeth Anne Franklin-Best, Blume Norris & Franklin-Best LLC, of Columbia, for Petitioner.

Attorney General Alan McCrory Wilson, Senior Assistant Deputy Attorney General Megan Harrigan Jameson, and Assistant Attorney General Johnny Ellis James Jr., of Columbia, for Respondent.

_____

**JUSTICE FEW:** Among the several blatantly improper comments the prosecutor made in his closing argument to the jury in Oscar Fortune's murder trial, he claimed, "My job is to present the truth," and said, "if you look in the . . . Code of Laws . . . [, I] have to say what the truth is." "On the other hand," the prosecutor told the jury, "the defense attorneys' jobs are to manipulate the truth. Their job is to shroud the truth. Their job is [to] confuse jurors. Their job is to do whatever they have to -- without regard for the truth." The prosecutor explained that if he—the prosecutor—believes "somebody else did the crime," then he must "dismiss it." "And [if] I know the person has done something that I think the facts show they're guilty of, then I can't [dismiss] it. I have to go forward with it."

We find the prosecutor's improper remarks violated the defendant's rights under the Due Process Clause. We reverse the denial of post-conviction relief (PCR), and remand to the court of general sessions for a new trial.

## I.     Facts and Procedural History

The State charged Oscar Fortune with murder and possession of a weapon during the commission of a violent crime in connection with a shooting in the parking lot of the Huddle House in Cheraw, South Carolina, on December 23, 2001. Evidence presented at trial demonstrated both Fortune and the victim—Anthony Shields—possessed and fired guns. Fortune claimed Shields shot at him first, and he shot Shields in self-defense.

Earlier in the evening, Fortune's cousin—Sonta McCall—attended a Christmas party with her friend Iris Gaston. In the early morning hours after the party ended, McCall called Fortune—who was at home and in bed—to tell him Shields hit her in the head with a beer bottle, and Shields' wife struck Gaston across the back with a bar stool, while they were at the Christmas party. McCall wanted Fortune to help her go to the police to take out a warrant on Shields. McCall told Fortune she was at the Huddle House, and Fortune said he would meet her there.

Fortune's girlfriend—Tonette Cash—drove Fortune to the Huddle House. Fortune testified he saw about eighty to a hundred people when he arrived there. He got out of Cash's car and spoke with McCall and Gaston. As they were getting ready to leave, McCall saw Shields pulling into the Huddle House parking lot. McCall walked to the front of the Huddle House to Shields' vehicle. Fortune got back into Cash's car and asked her to pull around so he could talk to Shields.

Before getting out of the car the second time, Fortune put Cash's .38 caliber pistol in his pocket. Fortune testified he took the gun with him for protection because of the large crowd of people in the parking lot, most of whom he did not know. Fortune testified that as he approached Shields' vehicle, "[Shields] and [McCall] were arguing, and I asked him what was up and he just shot." Fortune testified he was within arm's length of Shields when Shields fired the first shot from the driver's seat of the vehicle. Fortune testified he fired back, "Because at that time I was in fear for my life. I mean, he shot. I was in fear for my life at this time."

The jury found Fortune guilty of murder and possession of a weapon during the commission of a violent crime. The trial court sentenced Fortune to concurrent prison terms of thirty-seven years for murder and five years for possession of a weapon during the commission of a violent crime. The court of appeals upheld his convictions on direct appeal. *State v. Fortune*, Op. No. 2009-UP-259 (S.C. Ct. App. filed June 1, 2009).

Fortune filed an application for PCR. Fortune alleged his trial counsel was ineffective for failing to request a curative instruction and for failing to move for a mistrial after the assistant solicitor's statements in closing argument. Fortune also claimed the assistant solicitor's misconduct violated his right to due process and his right to counsel.

The PCR court denied Fortune relief. Fortune filed a petition for a writ of certiorari with this Court, which we transferred to the court of appeals pursuant to Rule 243(l), SCACR. The court of appeals granted Fortune's petition. After briefing, the court of appeals found the "PCR court failed to address all issues Fortune properly raised" and did not comply with section 17-27-80 of the South Carolina Code (2014). That section provides, "The [PCR] court shall make specific findings of fact, and state expressly its conclusions of law, relating to each issue presented." The court of appeals remanded the case to the PCR court. *Fortune v. State*, Op. No. 2016-UP-102 (S.C. Ct. App. filed Mar. 2, 2016).

On remand, the PCR court again denied Fortune relief, stating, "The solicitor's remarks, while improper, are not so prejudicial to [Fortune's] substantial rights so as to deprive him of a fair trial, especially when combined with the accompanying objections of trial counsel and the curative comments of the trial judge." We granted Fortune's petition for a writ of certiorari.

## II.     Fifth and Fourteenth Amendments

The Due Process Clauses in both the Fifth and Fourteenth Amendments provide that no person may be deprived of liberty "without due process of law."  U.S. CONST. amend. V; *id.* amend. XIV, § 1.  To find whether the assistant solicitor's comments in closing argument violated the defendant's due process rights, we must determine whether the comments were improper, and if so, whether the improper argument so unfairly prejudiced the defendant as to deny him a fair trial.  *See Darden v. Wainwright*, 477 U.S. 168, 181, 106 S. Ct. 2464, 2471, 91 L. Ed. 2d 144, 157 (1986) ("The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S. Ct. 1868, 1871, 40 L. Ed. 2d 431, 437 (1974))); *United States v. Chorman*, 910 F.2d 102, 113 (4th Cir. 1990) (stating "the test for reversible prosecutorial misconduct" in a prosecutor's closing argument is "the prosecutor's remarks or conduct must in fact have been improper, and . . . such remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial" (citation omitted)).  As this Court has stated,

> Improper comments do not automatically require reversal if they are not prejudicial to the defendant.  On appeal, the appellate court will view the alleged impropriety of the solicitor's argument in the context of the entire record . . . .  The appellant has the burden of proving he did not receive a fair trial because of the alleged improper argument.  The relevant question is whether the solicitor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.

*Simmons v. State*, 331 S.C. 333, 338, 503 S.E.2d 164, 166-67 (1998) (citations omitted); *see also Vasquez v. State*, 388 S.C. 447, 458, 698 S.E.2d 561, 566 (2010) ("The relevant question is whether the solicitor's comments [in closing argument] so infected the trial with unfairness as to make the resulting conviction a denial of due process.").

At Fortune's trial, the assistant solicitor began his closing argument:

SOLICITOR: Ladies and gentlemen of the jury, thank you so much for your time throughout the course of this trial. I want to start by telling you that we both have jobs here. My job is to present the truth. In fact if you look in the South Carolina Code of Laws which mandates what a solicitor's job is we can't be like a normal attorney is.

A normal lawyer has to advocate on behalf of his client. But on the other hand the Solicitor can't. We have to say what the truth is and it's –

Defense counsel objected, arguing "the jury are the finders of the truth." The trial court ruled,

THE COURT: The jury is the finders of the truth. I think what he was referring to was there is also an obligation on the Solicitor's Office beyond simply that of presentation, but the jury does have the burden of deciding what is the truth in this matter.

The assistant solicitor continued,

SOLICITOR: And what that means is that we have something in law that [is] called nolle prosse,[1] and [to] nolle prosse a person that has been indicted for a crime or

---

[1] "Nolle prosse" is a shortened version of the archaic Latin term "nolle prosequi." In plain, modern English, the term means "to have (a case) dismissed." *Nolle prosequi*, BLACK'S LAW DICTIONARY (11th ed. 2019). In the era of our legal history when lawyers and judges used Latin, the term was commonly understood to mean what the assistant solicitor meant here. *See, e.g., State v. Gulden*, 13 S.C.L. (2 McCord) 524, 525 (1823) (stating "a *nolle prosequi* is usually predicated on a [belief] on the part of the prosecuting officer, that the evidence is insufficient to support the prosecution"). When the use of the term fell out of favor, it became necessary for us to define it. *See State v. Gaskins*, 263 S.C. 343, 347, 210 S.E.2d 590, 592 (1974) ("A Nolle prosequi is a formal entry on the record by the prosecuting officer by which he declares he will not prosecute the case further.").

charged with a crime. After further investigation somebody else did the crime where you can dismiss it and nolle prosse is the notif[ication] in which we dismiss the case.

And [if] I know the person has done something that I think the facts show they're guilty of, then I can't nolle prosse it. I have to go forward with it. And as I said my job is to show the truth. On the other hand, the defense attorneys' jobs are to manipulate the truth. Their job is to shroud the truth. Their job is [to] confuse jurors. Their job is to do whatever they have to -- without regard for the truth -- to get a not guilty verdict.

Defense counsel again objected. The trial court ruled, "I don't think that their job is to defraud the court or the jury and to that extent I sustain the objection."

The PCR court found the remarks were "improper." We find they were absolutely inexcusable. The assistant solicitor told the jury he has a statutory duty to screen cases, he suggested he had already determined Fortune was guilty, and he claimed he would have dismissed the case if he determined otherwise.

Courts have universally condemned comments like this. Over eighty years ago, addressing prosecutorial misconduct not unlike the assistant solicitor's closing argument in this case, the Supreme Court of the United States admonished prosecutors to uphold the integrity of the State in prosecuting crimes.

The [prosecutor] is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to

refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

*Berger v. United States*, 295 U.S. 78, 88, 55 S. Ct. 629, 633, 79 L. Ed. 1314, 1321 (1935); *see also State v. Northcutt*, 372 S.C. 207, 222, 641 S.E.2d 873, 881 (2007) ("Solicitors are bound to rules of fairness in their closing arguments . . . ."); *State v. Linder*, 276 S.C. 304, 312, 278 S.E.2d 335, 339 (1981) ("While the solicitor should prosecute vigorously, his duty is not to convict a defendant but to see justice done." (citations omitted)).

The Supreme Court has condemned a prosecutor's closing argument in which he suggests to the jury his "personal impression[]" the defendant is guilty.

> [S]uch comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.

*United States v. Young*, 470 U.S. 1, 18-19, 105 S. Ct. 1038, 1048, 84 L. Ed. 2d 1, 14-15 (1985).

Courts have also condemned the specific misconduct in this case, when the prosecutor invokes his duty to dismiss unfounded cases and boasts of his responsibility to prosecute defendants the prosecutor knows to be guilty. In *Devine v. United States*, 403 F.2d 93 (10th Cir. 1968), the prosecutor told the jury in his closing argument, "If I had any idea that these people were innocent, I would dismiss this case." 403 F.2d at 96. The Tenth Circuit condemned the misconduct.

> It cannot be doubted that statements expressing an advocate's personal belief in the merits of the case are to be deplored as constituting conduct beyond the scope of legitimate argument. Furthermore, when such statements

are made by a representative of the Government they acquire additional significance because of the position of public trust occupied by the speaker.

*Id.*

In *United States v. Garza*, 608 F.2d 659 (5th Cir. 1979), "the prosecutor in his closing argument . . . sought personally . . . to bolster the Government's case by indicating that it would not have been brought, and he would not personally have participated, if Garza's guilt had not already been determined."  608 F.2d at 661.  The Fifth Circuit condemned the prosecutor's misconduct.

It is particularly improper, even pernicious, for the prosecutor to seek to invoke his personal status as the government's attorney or the sanction of the government itself as a basis for conviction of a criminal defendant.

608 F.2d at 663.

Our own Court has condemned this type of misconduct.  In *State v. Thomas*, 287 S.C. 411, 339 S.E.2d 129 (1986), "the solicitor told the jury the case had already been examined by a magistrate and a grand jury, and a preliminary hearing had been held."  287 S.C. at 412, 339 S.E.2d at 129.  We stated,

We have repeatedly condemned closing arguments that lessen the jury's sense of responsibility by reference to preliminary determinations of the facts.
. . .

These statements to the jury are improper because they inject an arbitrary factor into jury deliberations.  The danger is that a juror might be persuaded to rely on the opinion of others instead of exercising his independent judgment as to the facts.  "Jurors are simply not to consider the opinions of neighbors, officials or even other juries."  We caution solicitors that arguments of this kind can rarely be harmless.

287 S.C. at 412-13, 339 S.E.2d at 129 (quoting *State v. Smart*, 278 S.C. 515, 526, 299 S.E.2d 686, 693 (1982)) (collecting cases).

If the misconduct in *Thomas* was not identical to the assistant solicitor's misconduct in this case, the misconduct in *State v. Woomer*, 277 S.C. 170, 284 S.E.2d 357 (1981), was identical. The solicitor argued,

> You know, the initial burden in this case was not on you all. It was on me. I am the only person in the world that can decide whether a person is going to be tried . . . . I mean I had the same thing you all did. I had to make up my mind in regards to this and under the law, if there is any question about it, you ask the judge, I have to make the first decision as to whether or not a person is going to be tried . . . .[2]

277 S.C. at 175, 284 S.E.2d at 359. We condemned the "solicitor's personal opinion [being] explicitly injected into the jury's deliberations as though it were in itself evidence." *Id.*[3]

---

[2] *Woomer* was a death penalty case and the solicitor's improper argument occurred during the penalty phase. 277 S.C. at 174, 284 S.E.2d at 359.

[3] *See also United States v. Smith*, 814 F.3d 268, 274-75 (5th Cir. 2016) (finding it "impermissible" for the prosecutor to state that the government had no incentive to prosecute Smith unless he were in fact guilty); *Cargle v. Mullin*, 317 F.3d 1196, 1218 (10th Cir. 2003) (improper for prosecutor to state that the government does not prosecute innocent people); *State v. Duke*, 358 So. 2d 293, 294 (La. 1978) (finding "clearly improper" prosecutor's remarks stating, "my job is to convict people that I feel are guilty. And that's exactly what I'm doing. I've nol-prossed many, many cases. I've dismissed cases"); *People v. Fuerback*, 214 N.E.2d 330, 332 (Ill. App. Ct. 1966) (finding prejudicial error because the prosecuting attorney, in reply to defendant's closing argument, stated he would have "nolled" the case if he did not think the defendant was guilty).

The assistant solicitor in this case also improperly characterized the role of defense counsel. We find this misconduct is also inexcusable. After claiming his role "to show the truth," the assistant solicitor told the jury,

> On the other hand the Defense attorneys' jobs are to manipulate the truth. Their job is to shroud the truth. Their job is [to] confuse jurors. Their job is to do whatever they have to -- without regard for the truth -- to get a not guilty verdict.

Courts have universally condemned this type of statement by a prosecutor. As the United States Court of Appeals for the Ninth Circuit has stated,

> [It is not] accurate to state that defense counsel, in general, act in underhanded and unethical ways, and absent specific evidence in the record, no particular defense counsel can be maligned. Even though such prosecutorial expressions of belief are only intended ultimately to impute guilt to the accused, not only are they invalid for that purpose, they also severely damage an accused's opportunity to present his case before the jury. It therefore is an impermissible strike at the very fundamental due process protections that the Fourteenth Amendment has made applicable to ensure an inherent fairness in our adversarial system of criminal justice. Furthermore, such tactics unquestionably tarnish the badge of evenhandedness and fairness that normally marks our system of justice and we readily presume because the principle is so fundamental that all attorneys are cognizant of it. Any abridgment of its sanctity therefore seems particularly unacceptable.

*Bruno v. Rushen*, 721 F.2d 1193, 1195 (9th Cir. 1983) (per curiam); *see also United States v. Ollivierre*, 378 F.3d 412, 420 (4th Cir. 2004) ("emphasiz[ing] the importance of ensuring that prosecutors refrain from impugning, directly or through implication, the integrity or institutional role of their brothers and sisters at the bar who serve as defense lawyers"), *opinion vacated on other grounds by* 543 U.S. 1112, 125 S. Ct. 1064, 160 L. Ed. 2d 1050 (2005); *United States v. Vaccaro*, 115 F.3d 1211, 1218 (5th Cir.1997) (finding prosecutor's statement that defense lawyers

"muddle the issues" is "clearly improper"); *United States v. Friedman*, 909 F.2d 705, 709 (2d Cir. 1990) (improper for prosecutor to argue that defense counsel would "make any argument he can to get that guy off"); *United States v. McLain*, 823 F.2d 1457, 1462-63 (11th Cir. 1987) (reversing conviction under plain error standard in part because prosecutor repeatedly stated that defense counsel "intentionally misle[d] the jurors and witnesses and . . . [lied] in court"), *overruled on other grounds by United States v. Lane*, 474 U.S. 438, 106 S. Ct. 725, 88 L. Ed. 2d 814 (1986).

Our own Court has also condemned similar remarks. *See State v. Parker*, 391 S.C. 606, 614 n.3, 707 S.E.2d 799, 803 n.3 (2011) ("It is generally improper for the prosecutor to accuse defense counsel of fabricating a defense or to otherwise denigrate defense counsel." (citation omitted)).

We next must determine whether the improper argument so unfairly prejudiced the defendant as to deprive him of a fair trial. *Chorman*, 910 F.2d at 113; *Simmons*, 331 S.C. at 338, 503 S.E.2d at 166-67; *see also Randall v. State*, 356 S.C. 639, 642, 591 S.E.2d 608, 610 (2004) (stating outside the PCR context, "Improper comments do not require reversal if they are not prejudicial to the defendant"); *State v. Durden*, 264 S.C. 86, 93, 212 S.E.2d 587, 590-91 (1975) (stating outside the PCR context, "The test of granting a new trial for alleged improper closing argument of counsel is whether the defendant was prejudiced to the extent that he was denied a fair trial").

Before we conduct this prejudice analysis, we first address three arguments the State makes to justify or excuse the assistant solicitor's misconduct. First, the State seeks to justify the remarks on the ground they were invited by improper closing argument by the defense attorney. We have reviewed the defense attorney's closing argument, and we do not find it to be improper. Even if it had been improper, the State's remedy is not to retaliate, but to object, which the State did not do. *See* CRIMINAL JUSTICE STANDARDS FOR THE PROSECUTION FUNCTION 3-6.8(b) (Am. Bar Ass'n 2018) ("If the prosecutor believes the defense closing argument is or was improper, the prosecutor should timely object and request relief from the court, rather than respond with arguments that the prosecutor knows are improper."). In addition, "the idea of an invited response is used not to excuse improper comments, but to determine their effect on the trial as a whole." *Vaughn v. State*, 362 S.C. 163, 169, 607 S.E.2d 72, 75 (2004) (citing *Young*, 470 U.S. at 11-12, 105 S. Ct. at 1044, 84 L. Ed. 2d at 9-11). There is no argument a defense attorney could make that could justify the improper remarks by the assistant solicitor in this case.

Second, the State seeks to excuse the improper remarks on the basis the evidence against Fortune was overwhelming. There is no dispute Fortune shot and killed Shields. Fortune testified at trial and admitted he shot Shields multiple times. This case, however, turned on the question of self-defense. The evidence of who shot first was hotly disputed. The State pointed to no element of self-defense where it presented overwhelming evidence the element did not exist. *See State v. Williams*, 427 S.C. 246, 250, 830 S.E.2d 904, 906 (2019) (stating it is "the State's burden to persuade the jury beyond a reasonable doubt that at least one element of [self-] defense does not exist").

The State did present the testimony of a forensic pathologist that one of the gunshots caused a contact wound, meaning the muzzle of Fortune's pistol was in contact with Shields' skin when the pistol was fired. While this and other evidence is strong proof for the State, we disagree the evidence against Fortune was overwhelming. *See Smalls v. State*, 422 S.C. 174, 191, 810 S.E.2d 836, 845 (2018) (stating in the context of an ineffective assistance claim, "for the evidence to be 'overwhelming' such that it categorically precludes a finding of prejudice . . . the evidence must include something conclusive, such as a confession, DNA evidence demonstrating guilt, or a combination of physical and corroborating evidence so strong that the [second prong of] *Strickland* . . . cannot possibly be met." (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674, 693 (1984))).

Third, as is almost always the case in PCR cases, Fortune's attorneys at trial, on direct appeal, and in PCR did not do a perfect job preserving all issues. Nevertheless, we find Fortune's claim that the assistant solicitor's misconduct violated his due process rights is squarely before us. Subsection 17-27-20(A) of our Post-Conviction Procedure Act provides,

> Any person who has been convicted of, or sentenced for,
> a crime and who claims . . . the conviction or the sentence
> was in violation of the Constitution of the United States or
> the Constitution or laws of this State . . . may institute . . .
> a proceeding under this chapter to secure relief.

S.C. Code Ann. § 17-27-20(A) (2014). As we have repeatedly explained, in most instances, a PCR claim is properly presented as a Sixth Amendment claim for

ineffective assistance of counsel. In *Al-Shabazz v. State*, 338 S.C. 354, 527 S.E.2d 742 (2000), for example, we stated,

> In a direct appeal, the focus generally is upon the propriety of rulings made by the circuit court in response to a party's motions or objections. In PCR, the focus usually is upon alleged errors made by trial or plea counsel. Therefore, when asserting the erroneous admission of evidence, a violation of a constitutional right, or other errors in a proceeding, the applicant generally must frame the issue as one of ineffective assistance of counsel.

338 S.C. at 363, 527 S.E.2d at 747; *see also Drayton v. Evatt*, 312 S.C. 4, 9, 430 S.E.2d 517, 520 (1993) ("Issues that could have been raised at trial or on direct appeal cannot be asserted in an application for post-conviction relief absent a claim of ineffective assistance of counsel." (citing *Hyman v. State*, 278 S.C. 501, 502, 299 S.E.2d 330, 331 (1983))); *Hyman,* 278 S.C. at 502, 299 S.E.2d at 331 ("The appellant argues also that sentencing for both crimes violated the prohibition on double jeopardy. She made no objection on this point at trial and may present it now only to support a claim of ineffective representation, not as a separate ground for relief."); *Cummings v. State*, 274 S.C. 26, 28, 260 S.E.2d 187, 188 (1979) ("At trial, respondent failed to object to the imposition of the sentence and, therefore, waived the right to have that sentence reviewed on direct appeal, or to raise such issue on Post-Conviction absent an allegation of ineffective assistance of counsel.").

Subsection 17-27-20(B) supports the explanation we made in these cases. The subsection provides, "This remedy is not a substitute for nor does it affect any remedy incident to the proceedings in the trial court, or of direct review of the sentence or conviction." S.C. Code Ann. § 17-27-20(B) (2014). In most circumstances, therefore, to be properly presented in a PCR action, a claim must be based on ineffective assistance of counsel.

In some circumstances, however, an inmate may present a claim for PCR based on constitutional violations other than ineffective assistance of counsel. Subsection 17-27-20(A) specifically provides this, "Any person who has been convicted of . . . a crime and who claims . . . the conviction . . . was in violation of the Constitution . . . may institute . . . a proceeding under this chapter to secure relief."

We find this is one of those cases. Fortune's trial counsel made a general objection to the assistant solicitor's improper comments, and, when the trial court did not address the full extent of the assistant solicitor's misconduct in its ruling, counsel did not press the issue. To the extent the trial court ruled, it sustained counsel's objections. Nothing, therefore, was subject to direct review. To the extent the trial court did not rule, and counsel did not insist on a more specific ruling, the claim would be cognizable under the Sixth Amendment for ineffective assistance of counsel. The full extent and effect of the assistant solicitor's misconduct in this case, however, is now subject to review only in a claim for a Fifth and Fourteenth Amendment due process violation. Under these circumstances, we find this is one of the cases we contemplated in *Al-Shabazz* and other cases in which a claim not based on ineffective assistance of counsel is cognizable for PCR.

Turning squarely now to whether the assistant solicitor's misconduct prejudiced Fortune, we find our discussion so far leaves little need for further analysis. As we cautioned in *State v. Thomas*, "arguments of this kind can rarely be harmless." 287 S.C. at 413, 339 S.E.2d at 129. The PCR court, however, focused on "the . . . objections of trial counsel and the curative comments of the trial judge" in finding the assistant solicitor's misconduct was not a due process violation. We focus on the same two points to support our judgment that the assistant solicitor's misconduct was a due process violation.

First, defense counsel's objections to the improper argument missed the most important issue. Counsel stated in his first objection, "the jury are the finders of the truth." The role of the jury, however, was not the issue that arose from the assistant solicitor's misconduct. Rather, the assistant solicitor's misconduct was to misrepresent his own role, improperly claiming for himself the responsibility to decide truth, as though his opinions as to what happened "were in itself evidence." *Woomer*, 277 S.C. at 175, 284 S.E.2d at 359. To the extent defense counsel's first objection had any focus, it focused the trial court away from the misconduct (that was the issue) to the role of the jury (which was not the issue). In his second objection, defense counsel said only, "Objection." Counsel failed to bring the trial court's attention to the fact the assistant solicitor just told the jury he already reviewed the evidence and would have dismissed the case if he didn't believe Fortune to be guilty. Our first point in support of our judgment that the assistant solicitor's remarks denied Fortune a fair trial is that defense counsel's objections almost completely missed the issue on which he should have focused.

Second, the trial judge's "curative" instruction actually exacerbated the assistant solicitor's misconduct. The trial court stated, "I think what he was referring to was *there is* also *an obligation* on the Solicitor's Office beyond simply that of presentation." (emphasis added). The assistant solicitor had just told the jury he had an obligation "to present the truth," and the trial court responded by telling the jury yes, in fact, the solicitor does have "an obligation . . . beyond simply that of presentation." Then, immediately after the trial court's validation of the solicitor's "obligation" to be truthful, the assistant solicitor proceeded to inform the jury that, in fulfilling that obligation, if "I know the person has done something that I think the facts show they're guilty of, then I can't [dismiss the case]. I have to go forward with it."

Then, when the assistant solicitor represented to the jury that defense lawyers "manipulate" and "shroud" the truth, and "do whatever they have to -- without regard for the truth," the trial court stated only, "*I don't think* that their job is to defraud the court or the jury." This weak and barely responsive statement served as much to bless the assistant solicitor's misconduct as it did to correct it. The trial court's "curative" instruction in this case enhanced—not mitigated—the prejudicial impact of the assistant solicitor's misconduct.

Whether this assistant solicitor's closing argument was improper—in light of the long history of courts condemning the same misconduct—is an easy question. The PCR court found it was improper, and we wholeheartedly agree. Whether the assistant solicitor's misconduct violated Fortune's due process rights is a tougher judgment call. In *State v. Thomas* in 1986—twenty years before Fortune's 2006 trial—we granted the defendant a new trial because—in our judgment—the solicitor's similarly improper closing argument required it. 287 S.C. at 412-13, 339 S.E.2d at 129. We cautioned solicitors not to engage in misconduct of this sort because we recognized the extent to which it endangers the due process rights of criminal defendants.[4] 287 S.C. at 413, 339 S.E.2d at 129. Today, we make the same judgment call. The assistant solicitor's misconduct in his closing argument requires that Oscar Fortune be granted a new trial.

---

[4] We did not specifically mention "due process" or the Fifth or Fourteenth Amendment in *Thomas*, an armed robbery case. 287 S.C. at 412, 339 S.E.2d at 129. Our reasoning, however, was clearly centered there. *See id.* (citing, for example, *State v. Sloan*, 278 S.C. 435, 440, 298 S.E.2d 92, 94-95 (1982) (finding the solicitor's closing argument was a "violation of the Fifth Amendment")).

### III. Sixth Amendment

Fortune argues the assistant solicitor's improper remarks infringed upon his Sixth Amendment right to counsel. *See Ollivierre*, 378 F.3d at 420 ("[T]he Sixth Amendment's right to counsel mandate[s] a prosecutor to refrain from such attacks against defense counsel . . . . Any comment by the prosecution that disparages a defendant's decision to exercise his Sixth Amendment right to counsel is thus improper."); *Bruno*, 721 F.2d at 1195 (stating the prosecutor's "insidious attacks on Bruno's exercise of his constitutional right to counsel and his attacks on the integrity of defense counsel were error"); *United States v. McDonald*, 620 F.2d 559, 564 (5th Cir. 1980) (prosecutor's reference that defense counsel was present when agents arrived to conduct a search in defendant's home improperly inferred defense counsel "acted illegally or unethically," and that defendant "would not have gotten a lawyer unless he was guilty" and therefore "penalized [the defendant] for exercising his Sixth Amendment right to counsel").

Because we grant Fortune a new trial based on a Fifth and Fourteenth Amendment due process violation, we find it unnecessary to decide whether the assistant solicitor's remarks impugning the integrity of defense counsel were a separate Sixth Amendment violation. However, the decisions cited in this section support our judgment that the assistant solicitor's misconduct sufficiently prejudiced Fortune to deny him a fair trial. As the Fifth Circuit stated,

> Comments that penalize a defendant for the exercise of his right to counsel and that also strike at the core of his defense cannot be considered harmless error. The right to counsel is so basic to all other rights that it must be accorded very careful treatment. Obvious and insidious attacks on the exercise of this constitutional right are antithetical to the concept of a fair trial and are reversible error.

*McDonald*, 620 F.2d at 564; *see also Bruno*, 721 F.2d at 1194 (finding prosecutor's improper remarks implying "defense counsel in criminal cases are retained solely to lie and distort the facts and camouflage the truth" were not harmless).

In his original PCR application, Fortune also alleged a Sixth Amendment ineffective assistance of counsel violation in several respects dealing with the assistant solicitor's improper closing argument. As we mentioned before, Fortune's various attorneys did not perfectly preserve all issues for our review. In this case, we need not decide whether Fortune's ineffectiveness claims are preserved because we reverse on other grounds. *But see Love v. State*, ___ S.C. ___, ___, 834 S.E.2d 196, 200 (2019) ("There are situations where the interests of justice require PCR courts to be flexible with procedural requirements *before* PCR applicants suffer procedural default on substantial claims." (quoting *Mangal v. State*, 421 S.C. 85, 99, 805 S.E.2d 568, 575 (2017))).

## IV. Conclusion

The assistant solicitor's improper statements to the jury during closing argument infected Fortune's trial with such a high degree of unfairness as to make his conviction a denial of due process. We reverse the order of the PCR court denying Fortune relief and remand to the court of general sessions for a new trial.

**REVERSED.**

**BEATTY, C.J., KITTREDGE, HEARN and JAMES, JJ., concur.**